## FIRST NAT. BANK OF ADA v. WOMACK *et al.*

No. 6407.    Opinion Filed March 14, 1916.

(156 Pac. 207.)

1.  **EVIDENCE—Parol—Ambiguous Instrument.** As a general rule parol evidence is not admissible to vary the terms of a written instrument, but the general rule is subject to the exception that, where anything appears upon the face of the instrument which suggests a doubt or ambiguity as to the party bound, or the character in which any of the persons who signed the instrument acted, parol testimony is admissible as between the original parties for the purpose of showing the true intent and meaning of the parties.

2.  **BANKS AND BANKING—Contract of Cashier—Acceptance of Benefit—Ultra Vires.** Where a cashier of a bank makes a contract which is beyond his power and authority, but the bank by reason thereof secures a benefit or beneficial effect, it will not thereafter be heard to urge nonliability thereunder on the plea of **ultra vires.**

(Syllabus by Burford, C.)

*Error from District Court, Pontotoc County;*
*Tom D. McKeown, Judge.*

Action by the First National Bank of Ada against J. R. Womack and others. Judgment for plaintiff against the defendant named and another, and judgment for the Farmers' & Merchants' National Bank of Roff, defendant, and plaintiff brings error. Former opinion withdrawn, and rehearing granted. Reversed.

*Wimbish & Duncan,* for plaintiff in error.

*Bullock & Kerr.* for defendants in error.

Opinion by BURFORD, C. Plaintiff in error sued in the court below upon a promissory note executed by the defendants Womack and Gilmore, further alleging that the

money represented by said note was loaned to the defendants Womack and Gilmore at the special instance and request of defendant Farmers' & Merchants' National Bank of Roff, and that said bank, by and through its cashier, F. E. Gilmore, guaranteed the payment of said note both verbally and in writing; that the funds derived from said note were placed to the credit of defendant Farmers' & Merchants' National Bank of Roff, and were withdrawn from the plaintiff bank by the said Farmers' & Merchants' National Bank of Roff by checks drawn by it. The exhibits attached to the petition, which it is alleged constitute the written guaranty of the payment of the note in question by the Roff bank, are as follows:

"FARMERS' & MERCHANTS' NATIONAL BANK.
"ROFF, OKLAHOMA, May 27, 1912.

"Mr. P. A. Norris, President First National Bank, Ada, Oklahoma—Dear Sir: This will introduce Mr. J. R. Womack, one of our business men and a customer of this bank. Mr. Womack wants to borrow $500.00, for 90 days, and is willing to pay 10% for it. We simply cannot accommodate him for the reason that we are loaned right up to the limit. Now, if you will let him have the money, I will sign the note with him, and will take care of the loan when it comes due, if he is not ready to take it up by that time. If you can favor him, I know that he will appreciate it very much, and so will this bank.

"Thanking you for past favors and any kindness shown Mr. Womack, I remain,

"Yours very truly,
"F. E. GILMORE, Cashier."

"ROFF, OKLAHOMA, June 1, 1912.

"Mr. E. S. Harraway, Asst. Cashier, Ada, Oklahoma —Dear Mr. Harraway: I have your very kind letter of the 20th with reference to the loan to Mr. Womack, who

did not return until today. I inclose note herewith signed by Mr. Womack and myself, and will ask you to kindly place the amount to the credit of this bank. If you prefer to have the note on one of your own blanks, if you will mail me the note I will have it signed and return to you.

"Thanking you for this and past favors, I remain,

"Yours very truly,

"F. E. GILMORE, *Cashier*."

Defendant Farmers' & Merchants' National Bank of Roff answered by a general denial and the plea of *ultra vires* and lack of authority upon the part of Gilmore to act for the bank, or to bind the bank upon any guaranty of this note, and specifically denied that the directors or stockholders had ever authorized Gilmore to execute or guarantee any such note. The cause came on for trial, and the court sustained a demurrer by the Roff bank to the evidence of plaintiff. Error is alleged upon this ruling, and upon the refusal of the trial court to admit certain evidence in relation to a conversation between the assistant cashier of the First National Bank and the defendant Gilmore. On the trial E. S. Harraway, assistant cashier of the plaintiff bank, testified as follows:

"State to the jury the substance of that conversation with Mr. Gilmore. A. Well, it was rather a confirmation of the letter. I had just called him up and told him that Mr. Norris had been out of town for a few days. He was out at the time. He came in, and I told him I had gone up to see Mr. Norris about the loan, and he said, inasmuch as the bank down there seemed to be of a disposition to take care of it when it was due, that we could make the loan, and I rather hesitated about it at the time, and I told Mr. Gilmore that we would take care of the loan for Mr. Womack on the strength of the letter he had written us advising that they would take care of it. The letter was written and signed by F. E. Gilmore, cashier."

An objection to this question and answer was sustained, and the answer stricken. Later in the trial plaintiff, after introducing the letter, Exhibit C, renewed this question, an objection was sustained, and the following offer of proof made:

"We expect the answer of the witness to be that after receiving the first letter under instructions from Mr. Norris the witness called up Mr. Gilmore and told him that, inasmuch as the bank would stand behind the loan, the First National Bank would make it."

There was testimony to the effect that the funds derived from the note were placed to the credit of the Roff bank in the Ada bank, and that such funds were checked out by the Roff bank. In our judgment, it was clearly error for the trial court to exclude the testimony of the witness Harraway, as offered, and to direct a verdict for the defendant bank. The letter heretofore set out was signed, "F. E. Gilmore, Cashier." The evidence offered, although slight, in some degree tended to explain whether or not Gilmore was acting in his individual capacity or as cashier of the Roff bank.

In *Janes v. Citizens' National Bank of North Enid*, 9 Okla. 546, 60 Pac. 290, in a lengthy and well-considered opinion, the Supreme Court of Oklahoma said:

"As a general rule, extrinsic testimony is not admissible to explain or vary the terms of a negotiable instrument, but this general rule is subject to the reasonable exception that, where anything appears on the face of the instrument which suggests a doubt or ambiguity as to the party bound, or the character in which any of the persons who signed the instrument acted, parol testimony is admissible as between the original parties for the purpose of showing the true intent and meaning of the parties."

Again, referring to the earlier decision in *Keokuk Falls Imp. Co. v. Kingland Mfg. Co.*, 5 Okla. 32, 47 Pac. 484, the court said:

"We cannot agree with the reasoning or the conclusions reached by the court. It appearing that the indorsers and guarantors having signed their names on the back of the note 'as Directors, Keokuk Falls Improvement Company,' suggested a doubt or ambiguity as to the character of their signatures; that is, whether their signatures to the note were in a representative or individual capacity. It seems that the court took the view that, as no doubt or ambiguity existed upon the face of the note, parol evidence was therefore inadmissible to explain in what capacity the guarantors had indorsed the note. The object of the introduction of parol testimony was not to vary or change the terms of the note, but solely for the purpose of showing in what capacity the guarantors had signed the instrument."

That decision has been consistently followed by this court *(Cohee et al. v. Turner & Wiggins*, 37 Okla. 778, 132 Pac. 1082, and cases cited), and is the settled rule.

The evidence of Harraway was admissible, not to prove an oral guaranty, but as tending to show that the signature of Gilmore was regarded as that of an officer of the defendant bank, and that such understanding was communicated to Gilmore, and that he did not dissent therefrom. It is urged that even if Gilmore acted on behalf of the defendant bank, no recovery can be had, for the reason that the act was beyond the scope of the authority of the cashier, and therefore not binding upon his principal. That ordinarily a national bank is not bound by the act of its cashier when such cashier has acted beyond the scope of his authority as such officer, is well settled. *American National Bank et al. v. E. W. Adams & Co.*, 44

Okla. 129, 143 Pac. 508, L. R. A. 1915B, 542. The defendant bank relies upon this doctrine, and further pleads that, even if Gilmore acted on behalf of the bank, such action was *ultra vires*. But, even though the act of the cashier was beyond his authority, yet the corporation may ratify it, and, even if a corporation act *ultra vires*, it may be estopped to set up that plea.

There was some evidence tending to show that the Roff bank might have received the proceeds of this loan, and, had the court admitted the evidence of the witness Harraway in relation to the conversation with Gilmore above set out, and allowed the question to go to the jury, there was evidence upon which the jury might have found that the letter, Exhibit B, was the act of Gilmore, cashier of the defendant bank, and that the defendant bank received and accepted the benefit of the loan made by reason of such letter. Under such circumstances neither the plea of lack of authority of its cashier nor the plea of *ultra vires* would have been available to the defendant bank.

In *Citizens' Central National Bank of New York v. Appleton,* 216 U. S. 196, 30 Sup. Ct. 364, 54 L. Ed. 443, the Supreme Court of the United States said:

"A national bank which guarantees a loan made by another bank in pursuance of an agreement that it be paid the amount due it by the borrower out of the proceeds of the loan cannot avoid its liability for the amount actually received by it pursuant to the arrangement on the ground simply of *ultra vires;* it may be liable for money had and received."

In the same opinion the court, referring to the case of *Aldrich v. Chemical National Bank,* 176 U. S. 618, 20 Sup. Ct. 498, 44 L. Ed. 611, said:

"A vice president of a national bank, without authority from it, borrowed money from another national bank, and placed the amount in still another bank to the credit of the bank which he assumed to represent in the transaction. The national bank in whose name the money was deposited drew the money out by check and applied it in discharge of its own valid obligations; and when it was sought to hold it liable, the defense, in part, was that the original borrowing was not only unauthorized by it, but was in violation of the National Bank Act. Upon an extended review of the authorities this court said: 'As the money of the Chemical Bank was obtained under a loan negotiated by the vice president of the Fidelity Bank, who assumed to represent it in the transaction, and as the Fidelity Bank used the money so obtained in its banking business and for its own benefit, the latter bank, having enjoyed the fruits of the transaction, cannot avoid accountability to the New York bank, even if it were true, as contended, that the Fidelity Bank could not consistently with the law of its creation have itself borrowed the money.' "

In *Crowder State Bank v. Ætna Powder Co.*, 41 Okla. 394, 138 Pac. 392, this court said:

"Where a cashier of a bank makes a contract which is beyond his power and authority, but the bank by reason thereof secures a benefit or beneficial effect, it will not thereafter be heard to urge nonliability thereunder on the plea of *ultra vires*. It may be considered as settled law in this state today that, when a corporation goes outside of its legitimate business and makes a contract, and that contract is executed, and the corporation has received the benefits of the contract, the courts will not listen to a plea of *ultra vires*."

We conclude, therefore, that the letters appended to the plaintiff's petition as Exhibits B and C and set forth above were ambiguous upon their face by reason of the

uncertain character of the signature, and that the court should have admitted the evidence of the witness Harraway in relation to the conversation with Gilmore as having some tendency to explain the ambiguity of the signature to such exhibits and as tending to show the intention of the parties in relation to the capacity, whether individual or as an officer of the bank, in which the defendant Gilmore signed the letters; that the court should have submitted the question of the liability of the defendant bank to the jury under proper instructions to the effect that, if they believed from a preponderance of the evidence that the letters referred to were understood by the parties to be written by Gilmore on behalf of the defendant bank, and that if they further believed that the defendant bank accepted the results of his act, and received a benefit or beneficial effect therefrom, said bank was liable to the amount of the benefit, if any, so accepted and received.

The opinion heretofore filed in this cause is withdrawn, a rehearing granted, and the cause reversed as to defendant in error Farmers' & Merchants' National Bank of Roff, with directions to the trial court to grant a new trial between the plaintiff, First National Bank of Ada, and defendant Farmers' & Merchants' National Bank of Roff, and for further proceedings not inconsistent with this opinion.

By the Court: It is so ordered.