**BENNETT et al. v. W. A. GAGE & CO.**

No. 9059—Opinion Filed Oct. 22, 1918.

Rehearing Denied Dec. 24, 1918.

(176 Pac. 744.)

1. **Banks and Banking—Ultra Vires Acts—Guaranty to Cotton Factor—Liability.**

H. D. B., a cotton buyer at Mangum, Okla., shipped to W. A. G. & Co., engaged in the business of a cotton factor at Memphis, Tenn., 126 bales of cotton, and drew 10 cents per pound thereon. The City State Bank of Mangum, Okla., guaranteed in writing W. A. G. & Co., against any loss in said cotton. The drafts for said cotton with bill of lading attached were drawn by H. D. B. on W. A. G. & Co., and indorsed to the City State Bank, which cashed them and gave H. D. B. credit for the amount they represented, less the exchange. Held, in an action by W. A. G. & Co. against H. D. B. and City State Bank for a deficit resulting in the sale of the cotton, that the City State Bank is liable for the loss sustained

by W. A. G. & Co., and cannot escape liability on a plea of ultra vires.

2. **Same—Contract—Receiving Benefit.**

Where the cashier of a bank makes a contract which is beyond his power and authority, and the bank by reason thereof secures a benefit, it will not thereafter be heard to urge nonliability on the ground that the contract was an ultra vires act.

(Syllabus by Davis, C.)

Error from District Court, Greer County; W. C. Crow, Assigned Judge.

Action by W. A. Gage & Co. against H. D. Bennett and another. Judgment for plaintiff, and defendants bring error. Affirmed.

A. M. Stewart, E. M. Stewart, and H. D. Henry, for plaintiffs in error.

Garrett & Thacker, for defendant in error.

Opinion by DAVIS, C. This is an action commenced in the district court of Greer county, Okla., by the defendant in error, hereinafter referred to as plaintiff, against the plaintiffs in error, hereinafter referred to as defendants. H. D. Bennett, during the month of November, 1913, and for some years prior thereto, was engaged in the business of buying and selling cotton at Mangum, Okla. On the 19th day of November, 1913, he shipped to the plaintiff 41 bales of cotton. The plaintiff is a cotton factor with its principal place of business at Memphis, Tenn., and as such cotton factor receives and stores cotton and advances money on said cotton to its customers, charging for said work the regular commission for selling cotton, also charging a certain sum for each bale so stored. The plaintiff also procures insurance and looks after the cotton in a general way. Customers, who consign cotton to the plaintiff, pay for the money advanced on said cotton, in addition to the incidental charges, 6 per cent. as interest. After Mr. Bennett made the shipment to the plaintiff he wrote a letter in which he stated to plaintiff that he had shipped 41 bales of cotton and had drawn a draft for 10 cents per pound on said cotton, and that he was furnishing a bank guaranty against loss on said cotton. The plaintiff replied to this letter on the 25th day of November, 1913, and notified Mr. Bennett that it was willing to protect his draft attached to bill of lading under the guaranty of the City State Bank of Mangum, but requested that no more cotton be shipped and draft drawn with bill of lading attached, for the reason that the condition of the cotton grown in that section of the state was such that the plaintiff desired to examine said cotton and classify

the same prior to making any advances thereon. On the 20th day of November, 1913, the City State Bank of Mangum, Okla., wrote the following letter to W. A. Gage & Co.:

"Gentlemen: Two of our customers, Claunch & Futch and H. D. Bennett, have shipped you to-day 52 and 41 bales of cotton respectively, and have drawn on you at about 10 cents a pound with ladings attached.

"We will kindly ask that you honor their drafts, and we will hereby guarantee that you will be fully protected in the amount advanced on the arrival of the cotton. We presume they are writing you selling instructions by this same mail."

On November 25th W. A. Gage & Co. replied to the foregoing letter as follows:

"Gentlemen: Replying to your letter of November 20th, relative to a shipment of cotton by Claunch & Futch and also a shipment of cotton by H. D. Bennett against which they have each made drafts at $40.00 per bale, or ten cents per pound, please let us say that we will pay these drafts attached to bills of lading on the specific shipments mentioned of fifty-three and forty-one bales respectively, because of your guaranty that you will fully protect us in the amount advanced, and should the cotton sell for a less amount net than the drafts above mentioned, with interest at 6 per cent. from the date they are paid by us, we shall expect you to make good the deficit.

"Please let us say also that, because of the peculiar quality of a large amount of cotton from that section, we would not care to advance on any more shipments until after the cotton has arrived and been examined by us.

"By waiting until the cotton is in our hands we will be in a position to make the advance a maximum amount in accordance with the value of the cotton, which of course we willingly do."

Mr. H. D. Bennett on November 19, 1913, drew a draft for the 41 bales of cotton, and indorsed the same to the City State Bank of Mangum. The draft was sent in due course of business to Memphis, Tenn., and presented to W. A. Gage & Co., and by said company paid. This draft, which was in the sum of $2.038.20, was credited to the account of Mr. Bennett on the date that it was drawn. Before Mr. Bennett and the City State Bank of Mangum received a communication of November 25, 1913, from W. A. Gage & Co. advising that no more cotton be shipped and draft drawn with bill of lading attached, Mr. H. D. Bennett made another shipment of 85 bales of cotton, and drew on W. A. Gage & Co. for the sum of

10 cents per pound. When this shipment was made, the City State Bank of Mangum sent the following letter to W. A. Gage & Co.:

"Gentlemen: Messrs. Claunch & Futch and H. D. Bennett have shipped you to-day 125 and 85 bales of cotton respectively, drawing on you with ladings attached for approximately 10 cents per pound. We kindly ask that you honor their drafts; we guarantee you against any loss of same upon arrival of cotton."

On November 28, 1913, W. A. Gage & Co. sent the following telegram to the City State Bank of Mangum. Okla.:

"Please wire us as follows: 'Will protect you against loss on one hundred twenty-four bales cotton shipped by Claunch & Futch, eighty-five bales shipped by H. D. Bennett, should net proceeds when sold not cover draft of ten cents per pound and interest.' Your letter does not fully cover and we need above wire from you before paying drafts."

In reply to the foregoing telegram, on November 29, 1913, W. A. Gage & Co. received the following telegram:

"Will protect you against loss on one hundred twenty-four bales shipped by Claunch & Futch, eighty-five bales shipped by H. D. Bennett, net proceeds when sold."

On November 28, 1913, the City State Bank of Mangum wrote the following letter to W. A. Gage & Co.:

"Gentlemen: We acknowledge receipt of your favor of the 25th and contents noted. However, before receiving your favor two of our customers made you a second shipment which we wrote you about under date of November 25th, guaranteeing you against any loss on same. We kindly request that you protect these drafts, accepting our former letter as your protection and we will in the future be governed by your favor of the 25th. We feel sure that the other shipments have value and as we are protected at this end, we do not hesitate to make the guaranty to you."

The foregoing letters and telegrams constitute the material part of the negotiations between the plaintiff and defendants, and when the drafts in question were presented they were duly paid by the plaintiff. The amount of the cash advanced on the cotton shipped by Mr. Bennett was $6,177. The cotton in question was stored in the warehouse of the plaintiff for the purpose of being sold on the cotton market of Memphis, Tenn. There were several communications had between plaintiff and defendants in reference to the sale of this cotton, but the defendants were holding said cotton for a

greater price than could be realized on the market at Memphis. The cotton season of 1913 closed on September 1, 1914, at which time the plaintiff wrote defendants concerning the account that it was carrying, and submitted a statement of the amount due. The letter in question is as follows:

"Dear Sir: As this is the beginning of the cotton season and the wind-up of all accounts for last year, we are handing you a statement of H. D. Bennett's account, showing what we have charged up for freight, storage, and insurance to date, which leaves debt balance of $7,094.31 against the 126 bales that we are holding under your former instructions. As we are carrying quite a heavy load at this time, we would be glad to have you send us $1,000.00 to apply on this account. and send us more if you can. We would like to have you write us any time when you wish to change your instructions. We think you should not hesitate in send us some additional margin.

"Hoping to hear from you by return mail, we remain,

"Yours very truly."

No reply was made to this letter, and on September 23, 1914, the plaintiff wrote another letter to the City State Bank in which it again stated that the account was not satisfactory, and that it desired a remittance of $1,000 as a margin to protect it against loss. The foregoing letters were answered on October 9, 1914, as follows:

"Gentlemen: In response to your recent letters relative to the H. D. Bennett cotton we hardly know how to reply to your demands except to say that we are not in a position to advance any money to you at this time for the reason that our demands at home are more than we can supply

"Then again we do not feel that we are obligated to keep the margin up on this cotton to any certain amount. And we would hardly think this an opportune time to sell that grade of cotton on account of the market condition."

On October 13, 1914, Mr. H. D. Bennett wrote to the plaintiff as follows:

"W. A. Gage & Co., Memphis, Tenn.— Gentlemen: Cotton is selling at about 6-cent basis here, and it looks to me like it should be bought instead of being sold at these prices. If you are in a position to help me on some of this cotton by making me an advancement of about $30.00 a bale to help out on the loss, I will be compelled to take on the cotton I already have with you. I certainly would appreciate it.

"If you will do this, I will see that you get a nice business from the farmers around here. I can get quite a lot of them to ship you, and I will class it for them here so

that they will not overdraw on you. We have a good class of cotton here this season with a good heavy-bodied staple. Last season's cotton, is nothing to compare with this season's. Our staple is as good as 1½ now and then 1⅛ inch is plentiful.

"I am very sorry I have imposed on you the way I have, but if you will help out of this right, I will see that you get business enough to repay you for your trouble. I will advertise in the local papers for you and will talk it on the streets.

"I hate to see this cotton get away at this price. It may go lower, but I don't think it will go much lower.

"Let me hear from you as soon as possible.

"Yours very truly,      H. D. Bennett."

The plaintiff refused to accept the proposition made by Mr. Bennett. On November 27, 1914, the plaintiff wrote Mr. H. D. Bennett and the City State Bank that, unless the account that it was carrying was taken care of by the 10th day of December, 1914, plaintiff would be compelled to sell the cotton to the best advantage on the market for reimbursement and to look to Mr. Bennett and the bank for the difference. In reply to this demand Mr. H. D. Bennet, by his attorney, E. M. Stewart, wrote a letter to plaintiff in which he protested against the sale of this cotton, and informed plaintiff that he would hold said company for any damage or loss that might occur as a result of a premature sale. Upon the receipt of this letter from Mr. Bennett an action was begun in the chancery court of Shelby county, Tenn., to foreclose the lien of the plaintiff on said cotton, and have the same sold and the proceeds derived therefrom applied on said account. This action proceeded to judgment, and in compliance with said decree the cotton in question was sold on the 7th day of August, 1915, and on the 8th day of August, 1915, the sale was confirmed and approved by the chancery court of Shelby county, Tenn. After the expenses of sale was deducted from the amount realized on said cotton there was a balance due the plaintiff of $3,539. This action was begun to recover this indebtedness. The defendants each filed an answer to the petition of the plaintiff. The defendant the City State Bank, among other things, pleaded that the act of Mr. Percy Cornelius, cashier of said bank, was ultra vires, and therefore did not fix any liability on the bank for the deficit due the plaintiff on said cotton. The defendant Mr. H. D. Bennett filed an answer in which it was claimed that the plaintiff had not acted according to instructions in the

handling of said cotton, and that by reason thereof the defendant had been damaged in the sum of $1,500, for which he prayed judgment against the plaintiff. A reply was filed to the respective answers of the defendants, and on these issues the cause was submitted to a jury, and a verdict returned for the sum of $3,539, with interest from May 27, 1916. A motion for a new trial was duly filed by each of said defendants and was overruled by the court, to which action of the court the defendants excepted, and prayed an appeal to the Supreme Court of this state.

The main question presented here for determination is whether or not the guaranty furnished by the bank is such a contract as can be enforced against the bank. Counsel for the bank takes the position that all of the acts and representations made by the cashier of the City State Bank of Mangum, Okla., are void and unenforceable for the reason that the guaranty made by said cashier is an ultra vires act, and cannot fix any liability on the defendant bank for the loss sustained by the plaintiff in this transaction. The position thus taken by counsel for the defendant is not tenable, for the reason that this question has been decided adversely to the contention advanced by said bank. The decisions in this state, as well as practically every other state, are uniform in their holding that, when a bank makes a guaranty and receives benefits from said transaction, it is estopped to escape liability thereon by a plea of ultra vires. One of the first decisions of this court on this question is that of Crowder State Bank v. Etna Powder Co. et al., reported in 41 Okla. 394, 138 Pac. 392, L. R. A. 1917A, 1021. The defense was urged that the guaranty of the bank was an ultra vires act, and that no liability could be enforced by reason thereof against the bank. The opinion was written by Commissioner Robertson, and the rule announced in the syllabus of said case is as follows:

"(1) Where a cashier of a bank makes a contract which is beyond his power and authority, but the bank by reason thereof secures a benefit or beneficial effect, it will not thereafter be heard to urge nonliability thereunder on the plea of ultra vires.

"(2) It may be considered as settled law in this state to-day that, when a corporation goes outside of its legitimate business and makes a contract. and that contract is executed, and the corporation has received the benefits of the contract. the courts will not listen to a plea of ultra vires."

In the case of First National Bank of Ada v. Womack, 56 Okla. 359, 156 Pac. 207. this question was again before this court, and the rule announced by Judge Robertson was adhered to in said opinion. The facts in the case of Bank v. Womack show that the Merchants' National Bank of Roff had a customer who desired to borrow the sum of $500 for 90 days but that said bank was not in a position to accomodate him for the reason that it did not have sufficient funds at that time. Mr. F. E. Gilmore, cashier of said bank, wrote a letter to the First National Bank of Ada, in which he requested that a loan be made to Mr. Womack for the amount of $500, and stated in said letter that when said amount should come due that the Farmers' & Merchants' National Bank of Roff would take care of the loan. In compliance with this letter the First National Bank of Ada made the loan to Mr. Womack. When the loan matured it was not paid, and suit was instituted against Mr. Womack and the Farmers' & Merchants' National Bank of Roff, Okla., to recover the amount advanced to Mr. Womack. It appears from the evidence that when the loan was made, the money advanced was checked out by the Farmers' & Merchants' Bank of Roff, Okla. The syllabus in this case is as follows:

"Where a cashier of a bank makes a contract which is beyond his power and authority, and the bank by reason thereof secures a benefit or beneficial effect, it will not thereafter be heard to urge nonliability thereunder on the plea of ultra vires."

The facts in this case are stronger than in any cases that have heretofore been decided by this court. There is no dispute as to the material facts concerning this transaction. On the faith of the guaranty made by the City State Bank of Mangum, Okla., the drafts presented to the plaintiff were paid. At the request of both defendants, the cotton was held for a period of more than one year, during which time there was a considerable decline in the price of cotton The evidence further discloses that at or about the time that the drafts in question were drawn the defendant Mr. Bennett, was indebted to the City State Bank of Mangum, Okla., in the sum of $8,288.32. This was the condition of his account on the 18th day of November, 1913. On the 20th day of November, 1913, the indebtedness due the bank was $6,304.44. On the 24th of November the amount of indebtedness due to said bank by Mr. Bennett was $6,725.94. On November 26th this indebtedness had been reduced to $2,875.12. From the condition of Mr. Bennett's account as shown by the evidence in this record it is but reasonable to infer that the amount of money advanced by the plaintiff was credited on the indebtedness due

by Mr. Bennett to the defendant bank. No other conclusion can be reached, in view of the fact that there is no evidence either upon the part of the bank or Mr. Bennett that reasonably tends to show that any other disposition was made of the money. This money having been advanced on the faith of the guaranty made by the bank, it would be inequitable and unjust to permit the bank to escape liability on a plea of ultra vires after having received all the benefits derived from this transaction. In fact, the letter sent by said bank to the plaintiff plainly states that the bank was amply secured against any loss at Mangum, Okla., and was therefore in a position to guarantee the plaintiff against loss on said cotton.

As this question has been foreclosed by the decisions heretofore cited, a further discussion of this phase of the case is unnecessary. An examination shows that practically every court in the United States has adopted the rule that is followed in this state. We believe this rule to be founded on the plainest principles of justice, and to follow any other rule would destroy the integrity of commercial transactions and permit corporations to receive valuable benefits derived from said transactions and to escape just liability by a plea of ultra vires: The court instructed the jury that, unless it should find that the defendant bank received some benefit from this transaction, it would not be liable on said guaranty. There is no complaint urged in this court against any of the instructions given to the jury. They constitute a splendid statement of the law applicable to the facts in this case, and the verdict of the jury has determined the question of liability adversely to the defendants.

At the trial of the case the Code of Tennessee was introduced to prove the law of that state that provides the manner in which a factor's lien may be foreclosed. A considerable portion of the defendant's brief is devoted to the action of the court in permitting this Code to be introduced. The action of the court in this matter is not material, for the reason that the judgment and decree of the chancery court of Tennessee was offered in evidence. This decree was properly certified to and the finding of the chancery court on all the questions involved in said action was conclusive on the courts of this state.

The only error urged by Mr. Bennett relates to the admission of evidence. We have made a careful examination of all the assignments of error, and fail to find that the action of the court was prejudicial to the rights of the defendants. It was strongly urged by Mr. Bennett in the trial of this case that the plaintiff had not acted in good faith in his transactions, in that it had failed to comply with his instructions in reference to the handling of this cotton, and that the verdict is not supported by the evidence. We feel that the letter that was written by Mr. Bennett in October, 1914, is conclusive of his liability. It is expressly admitted in that letter that the loss incurred was to be borne by Mr. Bennett. and no complaint was ever made by either Mr. Bennett or the bank that the plaintiff had not acted in good faith in this transaction until this suit was instituted for the purpose of enforcing the collection of this indebtedness. The verdict returned by the jury in this case is amply supported by the evidence, and there is no occasion for the same to be disturbed by this court.

We therefore recommend that this judgment be in all things affirmed.

By the Court: It is so ordered.