## STATE ex rel. WALCOTT, Bank Com'r. v. BROWN et al.

No. 15786—Opinion Filed Sept. 15, 1925.

1. **Banks and Banking—Liability on Cashier's Bond for Violation of Banking Laws in Borrowing from Bank.**

In a suit against the cashier of a bank and the surety on his bond for a violation of the banking law in borrowing money from the bank, where it is shown that the entire transaction was between another party and another bank, and the entire deal was consummated prior to the time that said cashier in fact became cashier, and executed his bond, neither he nor his surety is liable on his bond for said acts.

2. **Same.**

Where a person purchases stock in a bank and pays part cash and gives a note secured by a real estate mortgage for the balance, and the person to whom the note is given sells the note to a third party and assigns the note and mortgage to said third party, and the party purchasing the stock afterwards becomes cashier of the bank whose stock he bought, and before he became cashier, and the bank for which he became cashier is in no way connected with the giving of the note or the sale of the stock, and in no way becomes liable for the payment of said note, the surety on the cashier's bond is not liable.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Mayes County; A. C. Brewster, Judge.

Action by the State of Oklahoma ex rel. Roy Walcott, Bank Commissioner, against Sherman William Brown and the Federal Surety Company. Judgment for defendants, and plaintiff appeals. Affirmed.

The parties in this suit appear in this court as they did in the court below, and will be referred to as plaintiff and defendant accordingly.

The suit was brought by the plaintiff to recover the sum of $3,100 on a bond executed by Sherman William Brown, as principal, and the Federal Surety Company, as surety, on his bond to the First State Bank of Pensacola, Okla. while Brown was acting cashier of said bank. The facts as disclosed by the record, out of which this action grows, are as follows: William Jones Cook

was the owner of 36 shares of stock of said First State Bank of Pensacola, and on the 1st day of August, 1921, William Jones Cook sold his 36 shares of stock to Sherman William Brown for $3,600. Brown paid $500 cash, and gave his note to Cook for $3,100, secured by a mortgage on certain real estate in Wagoner county. The note was due 90 days from date. Immediately after this transaction, William Jones Cook hypothecated the note and mortgage given to him by Brown for $3,100 to the Central State Bank of Muskogee. It appears that Cook was well acquainted with C. T. Thompson, the president of the Central State Bank, and he went to Thompson to get him to carry this note. Thompson agreed to do so, but said he would like to enter the $3,100 as a credit to the First State Bank of Pensacola, and Cook could check on it through the First State Bank of Pensacola when he wanted to use any part of it. Thompson credited the First State Bank of Pensacola with the $3,-100 that he owed Cook, and the First State Bank of Pensacola credited Cook with the amount. The note was due the 2nd of November, and arrangements were made with Thompson to carry the note a further period of 60 days. Something like three weeks before the note became due by the terms of extension, the First State Bank of Pensacola, on account of failure of crops and being unable to collect its loans, was forced by the Bank Commissioner to close its doors. Soon after the First State Bank of Pensacola closed and was taken over by the Bank Commissioner, the Bank Commissioner went to Muskogee, and in checking over the books of the Muskogee Bank found this credit to the Pensacola Bank. He made some inquiry about it, and Thompson explained that it was a note and mortgage he bought from Cook, and that under the arrangement with Cook, he was to credit the Pensacola Bank with the amount of the note, $3,100, and the Pensacola Bank was to charge the Muskogee Bank with the $3,100. He then directed Thompson, the president of the Muskogee Bank, to return the note and mortgage to the Pensacola State Bank and cancel the credit, which Thompson attempted to do, and sent the note and mortgage to the Pensacola State Bank and notified them that they had charged off the credit. Mr. Brown, who had, since the commencement of this deal, become cashier of the Pensacola State Bank, immediately wrote to Mr. Thompson and told him that the Pensacola State Bank had nothing to do with the Cook note and mortgage, that that was a matter between Brown and Cook and the Muskogee Bank, and a transaction that the Pensacola Bank

had nothing to do with, and he returned the note and mortgage to the Muskogee Bank. All of this arrangement, that was originally made, was between Cook and the Muskogee Bank prior to the time Brown became cashier of the Pensacola Bank. The record shows that Brown was elected or appointed cashier of the Pensacola Bank on the 18th of August, and executed his bond as cashier on the 19th of August, so that the deal between the Muskogee Bank and Cook, by which the Muskogee Bank took over the note and mortgage and credited the Pensacola Bank with the $3,100, was done before Brown became cashier, and before he gave bond.

The record does not show why the Muskogee Bank did not foreclose its mortgage that was given to secure the $3,100 note, but it did not do so, and nothing was done towards collecting the note and mortgage until the 4th day of August, 1922, the Bank Commissioner commenced this suit against Brown and the Federal Surety Company. The gravamen of the action is that Brown executed this note to Cook in violation of the banking law, and that his bondsmen thereby became liable for the amount of the note in question.

The case was tried to the court without a jury, and the court made its findings of fact and conclusions of law, in which he found the facts in favor of the defendant Brown and the Federal Surety Company, and the Bank Commissioner, plaintiff below, has brought error to this court by filing a petition in error with case-made attached in this court in due time, and the case is now before the court for review.

J. T. McIntosh and Carey Caldwell, for plaintiff in error.

Ross & Thurman, for defendant in error Federal Surety Company.

Opinion by MAXEY, C. The case was tried as between the plaintiff and the Federal Surety Company, no service ever having been had on the defendant Sherman William Brown. The record shows that the parties stipulated as to the formal matters, such as the First State Bank of Pensacola was a bank corporation under the laws of the state of Oklahoma; and that at the time of filing a petition in this case, Roy Walcott was the Bank Commissioner of the state of Oklahoma; that the Federal Surety Company was a corporation doing business under the laws of the state of Oklahoma; and that Sherman William Brown was the duly elected and acting cashier of the First State Bank of Pensacola between August 19

and December 29, 1921; and that the bond' executed by the Federal Surety Company was in full force and effect up to and including the 29th day of December; that Joe H. Strain succeeded Roy Walcott as Bank Commissioner; and that O. B. Mothersead succeeded Joe H. Strain and is now the acting Bank Commissioner; and some other minor matters were agreed to that are immaterial to a decision of this case.

It is the contention of the plaintiff in error that because of the fact that Brown executed a note to Cook in payment of Cook's stock, and Cook sold the note to the Central State Bank of Muskogee, and that the Central State Bank credited the Pensacola Bank with the amount of said note, and authorized the Pensacola Bank to charge it to the Pensacola Bank with $3,100, that that constituted a violation of section 4119, Comp. Stats. 1921. We are unable to see just what application section 4119 of Compiled Stats. of 1921 has to the questions at issue in this case. Counsel also cites section 4126, Comp. Stats. 1921, which all go to violations of those sections by the officers in making various reports- or various statements or entries in the books of the bank, and it being unlawful for any officer of the bank to borrow directly or indirectly money from the bank in which he is connected, and showing that the officers are guilty of embezzlement or larceny in doing such thing. Of course these sections are only applicable if it is established that Brown borrowed money from the bank.

A short time after the Bank Commissioner took over the First State Bank of Pensacola, he also closed the Central State Bank of Muskogee and took that over, so that at the time of the commencement of this suit, the Bank Commissioner was in possession of the assets of both banks, and why he did not foreclose the mortgage that Brown gave to secure the note to Cook, we have not been able to understand. It seems to us that the' sure and safe way for the Bank Commissioner to collect this note was to foreclose the mortgage given to secure the same. It would have then avoided any question as to the liability of Brown or the surety on his bond and in our judgment that was the proper thing for the Bank Commissioner to do, because we do not think that Brown or the surety on his bond can be held in this action.

. The transaction between Brown and Cook, and between Cook and the Central State Bank of Muskogee, was made before Brown became cashier and before his bond was executed. There is nothing in that trans-

action that in any way involved the First State Bank of Pensacola. Brown gave Cook a promissory note for $3,100 and executed a mortgage on real estate to secure same and Cook took the note and mortgage to the Muskogee Bank and hypothecated same. It seems from the evidence that the arrangement that the Muskogee Bank should give the Pensacola Bank credit for the amount of the note, and the Pensacola Bank was in turn to give Brown credit for the note, was an arrangement made between the Muskogee Bank and Cook. The Pensacola Bank and Brown had nothing to do with that arrangement. The Pensacola Bank was in no way involved; and after the arrangements, as made, had been carried out, there was no chance for the Pensacola Bank to have lost anything. We do not know whether it was an effort on the part of the Bank Commissioner to protect the Muskogee Bank by suing Brown and the surety company, instead of foreclosing the mortgage on Brown's property, but it looks like the Bank Commissioner could have saved himself a great deal of trouble by foreclosing the mortgage and collecting the note that way, instead of seeking to get the money out of the bond or Brown on a theory which to say the least is very fine spun and attenuated.

The trial court heard all of the testimony of the witnesses and made its findings of fact and conclusions of law. We are not able to say that his findings of fact are not supported by the testimony. On the contrary, we think that his findings of fact are well supported by the testimony and that his conclusions of law are supported by the law of the case.

The attorney for plaintiff in error has seen fit to criticise severely the trial judge, which we think is wholly unjustified and improper, and it certainly does not help plaintiff's case before this court. The question of the liability of a bank on a guaranty of the payment of the debt of another has been before the courts of this state, and it has repeatedly held that the bank is liable only where it has derived some benefit from the transaction, and is thereby estopped to plead the ultra vires character of the act of its officers. Crowder State Bank v. Aetna Power Co., 41 Okla. 394, 138 Pac. 392; First State Bank of Ada v. Wowack, 56 Okla. 359, 156 Pac. 207; Bennett v. Gage, 74 Okla. 69 176 Pac. 744.

It is conceded that the Pensacola Bank neither did nor intended to derive any benefit from the sale of the $3,100 note by Cook to the Muskogee Bank, and there appears

no reason why it can be held liable on a contract or guaranty which it had no power to make, especially in view of the fact that Cook, in making arrangements to sell the note to the Muskogee Bank, explained all of the circumstances which showed that neither the Pensacola Bank nor its cashier had the slightest interest in the sale of the note, but were merely acting in the transaction to accommodate Cook, as stated by Brown in his letter to the Muskogee Bank, dated November 3, 1921. When the sale of the note was completed and the Muskogee Bank placed $3,100 to the credit of the Pensacola Bank, and the latter had placed $3,-100 to the credit of Cook, the rights of the two banks had become fixed, and the subsequent attempt of the Muskogee Bank to charge against the Pensacola Bank's credit the note which it had previously purchased from Cook, and the later issuance of the certificate of deposit and procuring its indorsement by the Pensacola Bank without consideration, and the subsequent concellation of the certificate of deposit, could not result in discharging the liability of the Muskogee Bank, to the Pensacola Bank. The Muskogee Bank still owns the $3,100 note and still owes the Pensacola Bank the $3,-100, and that probably accounts for the fact that the palintiff, as custodian of the assets of the Pensacola Bank, had not, to the time of trial, attempted the foreclosure of the mortgage on Brown's farm, or to enforce the guaranty of payment made by William Jones Cook.

The plaintiff's whole case is based on a wrong theory of Brown's liability and the liability of his bondsmen.

We think the trial court reached the right conclusion, both in its findings of fact and conclusions of law, and that its judgment should be, in all things, affirmed.

By the Court: It is so ordered.

Note.—See under (1) 7 C. J. p. 525, § 127 (Anno.) (2) 7 C. J. p. 525, § 127 (Anno).