## STANDARD FURNITURE CO. v. SMITH.

Circuit Court of Appeals, Eighth Circuit.
March 25, 1929.

No. 8306.

J. R. Keaton, Frank Wells, D. I. Johnston, George G. Barnes, and Roy C. Lytle, all of Oklahoma City, Okl., and Charles L. Earl, of Herkimer, N. Y., for appellant.

Philip Pierce, Bruce McClelland, Jr., and Louie G. Kneeland, all of Oklahoma City, Okl., for appellee.

Before LEWIS and VAN VALKENBURGH, Circuit Judges, and SYMES, District Judge.

SYMES, District Judge. The appellant, the Standard Furniture Company, filed its claim, made up of various details aggregating $18,693.08, against the bankrupt, the Western Bank Supply Company, a corporation. The trustee, appellee here, objected to certain items aggregating $11,870, based on a promissory note of the company dated December 29, 1922, for $10,000 principal, $870 interest, and $1,000 attorney's fees thereon, alleging that the note was executed without authority; that there was no consideration in

favor of the company; the real consideration being a private loan of $10,000, made by the claimant to D. W. Collins, president and general manager of the bankrupt corporation. The referee sustained the objections and disallowed the items. On review the United States District Court for the Western District of Oklahoma affirmed. The claimant appeals.

The bankrupt company at the times mentioned was engaged in the office supply business with offices at Tulsa and Oklahoma City, Okl. D. W. Collins was, at the time of the transactions in question, its president and general manager, with authority to borrow money in behalf of the company for use in its ordinary course of business. During 1922 there appears to have been some internal dissension among those interested, and Collins was desirous of buying out the disgruntled stockholders. Not having the necessary funds, he took the matter up with Mr. Brewer, manager of the Standard Furniture Company of Herkimer, N. Y., appellant, a manufacturer of office furniture, which enjoyed a profitable trade with the bankrupt. Collins and Brewer carried on negotiations by correspondence, beginning with a letter dated September 22, 1922, from Collins to Brewer, in which he stated in detail that he held an option on the stock of two of his disgruntled stockholders; his inability to borrow the necessary funds locally; and that he had decided to appeal to some of his friends in the trade for help in financing the purchase. Brewer replied September 29th that he was "hoping that I could figure out some way to help you finance the purchase of the stock in question," and expressing regret at his inability so to do at that time.

Other letters were exchanged which clearly disclose that the loan sought was purely a personal one, to secure which Collins was willing to pledge the company's credit, if necessary. In one of these Collins proposed that the loan be made on his personal note with the firm's indorsement, or, in the alternative, that Brewer accept the company's note, in which event, he (Collins) would execute his note to his company, "which would then enable me to put over the proposition I now have in mind," adding as an inducement to Brewer that he was quite confident he could make a similar arrangement with a rival concern in exchange for his company's business.

November 23, 1922, Brewer wrote Collins: "Now in regard to your proposition for a loan of $10,000.00," and agreed to loan the $10,000 by extending credit for merchandise in that amount, and take the company's note due in two years, adding: "We trust this arrangement will be entirely satisfactory to you, and that this will enable you to go on with the business, give you an opportunity to secure the outstanding stock available. * * *"

Shortly thereafter Collins forwarded the company's note in question for $10,000, and asked for the check at an early date, stating: "I am quite anxious to close up the matter of taking over the stock I have in mind by January 5th or 10th."

Next in chronological order is a telegram from the Standard Company to Collins, stating that the request for the $10,000 check was not in accordance with the letter of November 23d. Later, however, the Standard Company, under date of January 5, 1923, wrote that although the settlement was not in accordance with their previous understanding, they had decided to comply with Collins' request and sent its check payable to Western Bank Supply Company for $10,000, expressing the hope that it would "enable you to buy the shares in question." Collins indorsed the payee's name on the check, and then his own name thereon, and deposited it in his own bank account. Neither the check nor its proceeds ever appeared on the books of the bankrupt.

This bare outline discloses that the motive and object underlying the whole transaction was to finance Collins, so that he could buy out the disgruntled stockholders of his company. His acquisition of the stock was purely a personal matter, not in any way the concern of the corporation, nor for its benefit. From the very outset Collins made full disclosure to Brewer, acting for appellant, and in the exercise of ordinary business judgment, the latter must be conclusively held to have known that it was not a proper corporation matter. That any benefit was intended, or could result to the bankrupt, does not seem to have been the concern of either Brewer or Collins. The Standard Furniture Company was no doubt interested in keeping its good friend Collins in control of his company, in order that it might continue to sell it merchandise; but while a transaction of this nature might redound to the benefit of the Standard Company, it cannot be justified from the point of view of the bankrupt. The inducement offered by Collins for the loan was improper, and wholly inconsistent with his duties to his principal, and whether or not he succeeded in buying out the opposition was purely a personal matter.

Appellant's first proposition is that they

might properly rely upon Collins' authority to execute the note.

This is true as to ordinary business transactions within the scope of the corporate bsuiness, but has no application where, as in the instant case, it not only knew of the illegal and ultra vires acts of Collins, but aided and abetted therein.

Corporation transactions in excess or abuse of its powers are not necessarily void, especially where the matter is within their general scope. An exception to this rule, however, as well established as the rule itself, is made where the other party had knowledge that the power was exercised for an unauthorized purpose, or under circumstances not justifying its exercise. Where money is ostensibly loaned to a corporation, but with the understanding that it was to be used for an ultra vires purpose, and the lender has aided in such purpose, he will not be permitted to recover. In re Continental Engine Co. (C. C. A.) 234 F. 58, it was held that irrespective of what may be the presumptive authority of a corporation to execute notes for ordinary business purposes, there is no such presumption in favor of a payee who knows the notes were given for other purposes. In Ward v. City Trust Co., 192 N. Y. 61, 84 N. E. 585, a leading case, the New York Court of Appeals, under circumstances similar to the case at bar, points out that according to the custom of business men, the first inquiry would have called for a resolution of the bankrupt company authorizing its officer to use its funds in his personal matters; that the authority of a president to sign checks, notes, and other obligations in its behalf is confined to transactions of the company's business, and does not authorize in any manner such an officer to give away the assets of the company, or to use them to pay the personal debts of its officers, saying: "Such dangerous power * * * cannot be conferred unless the intention is expressed with the utmost clearness," and so plain that no other interpretation can rationally be given it. Page 71 (84 N. E. 588): "For it is against the general law of reason that an agent should be intrusted with power to act for his principal and for himself at the same time"—citing Bank of N. Y. v. American Dock & Trust Co., 143 N. Y. 559, 564, 38 N. E. 713. See, also, 7 R. C. L. §§ 629, 642.

Appellant does not claim that Collins had ever used the property of the corporation he represented before for his own purposes, or that it was at the time in financial difficulties. Bills and notes are not excepted from the well-established rule that contracts founded on an illegal consideration cannot be enforced. 8 C. J. 241, § 380. As pointed out in Fletcher's Cyclopedia of Corporations, vol. 3, § 1593 et seq., the rule that where an act or contract of a corporation is within the powers conferred by the charter, but the act is in fact in excess of its powers, ultra vires cannot be set up by the corporation, is based on the ignorance of the other party to the contract, and falls when it is shown that he has aided in the furtherance of the unlawful design.

Likewise, the Oklahoma rule, Bennett v. Gage & Co., 74 Okl. 69, 176 P. 744, that where a corporation, for instance, makes a guaranty, and receives benefits from the transaction, it is estopped to escape liability therein by plea of ultra vires, assumes that the other party is ignorant of the true situation, and that the corporation has received a benefit. Neither of these factors is present in the instant case.

Appellant further contends that the burden is upon the trustee to show facts that would constitute suspicious circumstances. We think this record not only discloses grounds of suspicion, but absolute knowledge on the part of appellant of Collins' intention to use the money for his own purposes, and that it took the note of the corporation with notice of the rights of the latter. Wilson v. Metropolitan Elevator Co., 120 N. Y. 145, 24 N. E. 384, 17 Am. St. Rep. 625; Bank of N. Y. v. American Dock & Trust Co., supra. These cases are indicative of the well-settled rule that an agent cannot bind his principal when he was confessedly engaged in an outside and personal transaction.

In the final analysis we have a situation where the note of an ordinary business corporation is negotiated, and the proceeds directly appropriated by an officer for his own personal use, with knowledge and aid of the payee. In the absence of specific authorization by the directors or the stockholders, the transaction is wholly ultra vires, and in the United States courts, at least, the corporation cannot be estopped from challenging the validity of the contract, or refusing further to perform. In McCormick v. Market Nat. Bank, 165 U. S. 538, at 549, 550, 17 S. Ct. 433, 436 (41 L. Ed. 817), the court said: "The doctrine of ultra vires, by which a contract made by a corporation beyond the scope of its corporate powers, is unlawful and void, and will not support an action, rests, as this court has often recognized and affirmed, upon three distinct grounds: The obligation of any one contracting with a corporation to

take notice of the legal limits of its powers; the interest of the stockholders, not to be subject to risks which they have never undertaken; and, above all, the interest of the public, that the corporation shall not transcend the powers conferred upon it by law." See also Fletcher's Cyclopedia of Corporations, vol. 10, 1921 Supplement, § 1539; O'Brien v. Wheelock, 184 U. S. 450, 22 S. Ct. 354, 46 L. Ed. 636; Bassick v. Ætna Explosive Co. (D. C.) 246 F. 974, at 1004; Thomas v. R. Co., 101 U. S. 71, 25 L. Ed. 950; Pennsylvania R. Co. v. St. Louis, etc., R. Co., 118 U. S. 290, 6 S. Ct. 1094, 30 L. Ed. 83; Central Transp. Co. v. Pullman's Palace-Car Co., 139 U. S. 24, 11 S. Ct. 478, 35 L. Ed. 55; Union Pacific R. Co. v. C., R. I. & P. R. Co., 163 U. S. 564, 16 S. Ct. 1173, 41 L. Ed. 265; Pullman's Palace-Car Co. v. Central Transp. Co., 171 U. S. 138, 18 S. Ct. 808, 43 L. Ed. 108.

It is very evident that the officers of the appellant thought that the form they gave the transaction would conceal the real facts. Such business morality has been often condemned, McMullen v. Hoffman, 174 U. S. 639, 19 S. Ct. 839, 43 L. Ed. 1117, and calls for the application of the rule. "It is a maxim in our law that a plaintiff must show that he stands on a fair ground when he calls on a court of justice to administer relief to him."

We are of the opinion that the record clearly sustains the findings of the referee and the lower court, and should be affirmed.

It is so ordered.