## PARKER GORDON CIGAR CO. v. FIRST NAT. BANK OF CLAREMORE.

No. 6209. Opinion Filed January 18, 1916.

Rehearing Denied February 15, 1916.

(154 Pac. 1153.)

1. **CONTRACTS—Validity—Public Policy—Assignment for Benefit of Creditors.** A contract entered into between a national bank and an insolvent merchant, who had made a general assignment for the benefit of all of his creditors—the bank being the largest creditor—providing that the bank would take over the stock of merchandise and pay all creditors' claims on condition that the merchant would induce the district court to accept the resignation of the assignee, who had qualified, and appoint a person to be named by the bank, is not void as against public policy.

2. **BANKS AND BANKING—Contract—Liability of Bank.** A petition by a creditor alleging the making of such contract, and that the resignation of the one assignee had been accepted, and the

other had been appointed, and that the bank had taken the stock of merchandise, and upon demand had refused to pay the claim of the plaintiff, setting out the amount due and owing, states a good cause of action against the bank.

(Syllabus by Galbraith, C.)

*Error from District Court, Rogers County;*
*T. L. Brown, Judge.*

Action by the Parker Gordon Cigar Company against the First National Bank of Claremore. Judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions.

*W. H. Bassman,* for plaintiff in error.

*J. I. Howard* and *C. B. Holtzendorff,* for defendant in error.

Opinion by GALBRAITH, C. Action was commenced in the trial court for balance due upon an account for goods, wares, and merchandise, sold and delivered. There was a demurrer to the petition, which was sustained by the court, and, the plaintiff electing to stand upon its petition, judgment was rendered against the plaintiff for costs. From that judgment an appeal has been prosecuted to this court.

There is only one assignment of error, namely, that the court erred in sustaining the demurrer to the plaintiff's petition. The petition, in substance, alleged that the plaintiff sold certain goods to the Davis Drug Company, at Claremore, and that there was a balance due upon this account of $57.50, and that the same was reduced to judgment on January 14, 1913; that that judgment, together with costs in the sum of $3, is still due and unpaid; that on the 16th day of January, 1913, the defendant in error, the First National Bank of Clare-

more, entered into a contract with the Davis Drug Company, whereby, for a good and sufficient consideration therein ·set out, it undertook and agreed to pay and discharge all of the obligations of said Davis Drug Company; that demand had been made upon the bank and payment had been refused. The contract under which the liability of the defendant in error is ·alleged reads as follows:

### "EXHIBIT B.

"This contract and agreement made and entered into this 16th day of January, 1913, by and between the First National Bank of Claremore, party of the first part, and Guy· M. Davis, party· of the second part, both of Claremore, Rogers county, Oklahoma, witnesseth: · That whereas the said party of the second part, Guy M. Davis, has heretofore been engaged in conducting a retail drug business in the city of Claremore, Rogers county, State of Oklahoma, the same being known as the Davis Drug Company; and whereas the said Guy M: Davis doing business as the said Davis Drug Company, as aforesaid, has made a voluntary assignment for the benefit of his creditors, naming one Ray Haynes assignee; and whereas the said party of the first part, the First National Bank of Claremore, is the largest creditor of the aforesaid Davis Drug Company; and whereas the said party of the first part is desirous of securing all the right, title and interest of the said Davis Drug Company: It is therefore agreed and understood by and between the parties hereto, in consideration of the sum of one dollar and other valuable considerations, as follows:

"First. That the party of the second part will procure the resignation of the· above-named Ray Haynes, as assignee of the said Davis Drug Company, and procure the appointment of one R. A. Patton, as assignee of the said Davis Drug Company.

"Second. And that after having complied with the above and foregoing covenants, said party of the second part will relinquish any and all claim, right and interest in and to all the goods, wares and merchandise and accounts belonging to the said Davis Drug Company, except such interest as the said Guy M. Davis now has in certain slot machines located in certain parts of said county of Rogers, State of Oklahoma. And for the full and complete performance of the above and foregoing covenants, and in consideration thereof, the party of the first part agrees and binds itself to perform the following covenants:

"First. That the said party of the first part will satisfy all of the indebtedness now existing against the aforesaid Davis Drug Company and will secure and turn over to the party of the second part releases in full from all the creditors of the said Davis Drug Company, including the party of the first part.

"Second. That said party of the first part further contracts and agrees to protect and secure the said party of the second part against any and all claims of the creditors of the said Davis Drug Company against the interest of the said Guy M. Davis in certain slot machines located in certain portions of Rogers county, State of Oklahoma, and guarantees that said property or interest will not be taken to satisfy any of the creditors of the said Davis Drug Company, but shall be preserved to the said Guy M. Davis as his individual property.

"Third. And the said party of the first part agrees to pay all of the expenses heretofore had in the matter of the assignment of the said Guy M. Davis, doing business as the Davis Drug Company, as aforesaid, including an attorney's fee of one hundred and fifty dollars due Kight & Willis for making said assignment, said one hundred and fifty dollars to be paid to the said Kight & Willis immediately upon the execution of this contract.

"Said party guarantees that the attached list is a full and complete list of all creditors having claims against the Davis Drug Company.

"Witness our hands this 16th day of January, 1913.

"THE FIRST NATIONAL BANK, by C. F. GODBEY, *Cashier*,

"*Party of the first part.*

"GUY M. DAVIS,

"*Party of the second part.*"

The demurrer to the petition sets out a number of grounds, but it was sustained by the trial court on the fourth ground, which reads as follows:

"That the defendant admitting the execution of said contract with the Davis Drug Company, then the defendant says that said contract with the Davis Drug Company was void as being against the policy of the law, and was not enforceable by the said Davis Drug Company or by Guy M. Davis doing business as the Davis Drug Company, and is therefore void and not enforceable against the defendant herein; the plaintiff not being a party to said contract."

The journal entry of the judgment reads, in part, as follows:

"The court being advised in the premises finds that said demurrer should be sustained, and finds that the contract attached to the plaintiff's bill of particulars as 'Exhibit B' is void as contrary to law and public policy, and cannot be enforced between said parties thereto; and that the court further finds that said contract being void as against public policy confers no rights on the plaintiff herein, and the court finds that said demurrer should be sustained, and it is so ordered."

It appears from the record that the Davis Drug Company was engaged in the retail business at the city

of Claremore, and that it had made a general assignment for the benefit of all of its creditors early in January, 1913, and that R. Haynes had qualified as assignee, and that the First National Bank of Claremore was its largest creditor, and that the bank had entered into an agreement in writing with the Davis Drug Company to take over its stock and pay all of its debts, provided the bank could name the assignee.    This condition, of course, necessitated the securing of the resignation of Mr. Haynes and the consent of the district court to the appointment of the person selected by the bank.    After the execution of this written agreement, Mr. Haynes resigned as assignee, and a Mr. Patton, the person named by the bank, was appointed and qualified, and the bank obtained the stock of goods of the Davis Drug Company.    It appears, however, that when the plaintiff in error, a creditor of the Davis Drug Company, asked the bank to pay its claim, the bank refused, and denied liability, and when sued interposed the objection that its contract with the Davis Drug Company was against public policy and void, and that it therefore was not enforceable by the drug company or any of its creditors.    This was the view taken by the trial court in sustaining the demurrer to the petition.

It is urged on behalf of the plaintiff in error that this was an erroneous view of the law; that there is nothing in the contract between the bank and the drug company that involved moral turpitude, or that provided for doing anything immoral or illegal, or in any way contravened public policy; that the subject of the contract was a proper and legitimate subject of contract, and that the bank had voluntarily entered into the contract and had taken its benefits and should not be relieved

from its burdens; that the bank had agreed for a valuable consideration to pay the claim of the plaintiff in error, and it should not be relieved from this obligation.

On the other hand, it is argued by the defendant in error that under the statute the control of the assignee was placed entirely with the district court; that the assignee was appointed by the court and could not be removed without the consent of the court; and that the agreement set out bound the drug company to secure the resignation of the assignee and to induce the district judge to appoint another assignee; and that this carried with it an obligation to unduly influence the court in its official acts, and the contract or agreement was for that reason contrary to public policy and void.

It does not seem that the contract called for the exercise of any improper influence on the court in securing the resignation of one assignee and the appointment of another. There was no moral turpitude involved in the fact that the bank made its proposal conditional upon the appointment of an assignee to be named by it, although this condition contemplated a request to the judge of the district court to accept the resignation of the assignee who had qualified, and the appointment of a person to be nominated as his successor. The reasons for the bank making this condition do not appear. It may have been made for the reason that an officer of the bank, if appointed assignee, would administer the trust gratuitously and thus save to the estate the statutory fees allowed to assignees. Whatever the reason for the condition may have been, it appears that the judge recognized the propriety of the suggestion and acceded to the same and accepted the resignation of Mr. Haynes and

appointed the person named by the bank as assignee. This action on the part of the court and the parties in interest was entirely consistent with good faith and honesty and integrity of purpose of all parties concerned.

The line of authorities cited by the defendant in error to the effect that contracts made with a view of securing the appointment of some one to an office, or to exercise influence in securing legislation, or to influence judicial decisions, are void, have no application to the case at bar. All of that class of cases involve agreements in which moral turpitude appears, and in which improper influence is expected to be used. The case at bar is not that character of case.

A case very much in point, and applying the controlling rule, is that of *Baumhoff v. Oklahoma City Electric, Gas & Power Co.*, 14 Okla. 127, 77 Pac. 40. In that case Baumhoff entered into a contract with the Oklahoma City Electric, Gas & Power Company for the purchase of its property and franchise, provided that certain amendments to the franchise of the company, to be agreed upon, should be passed by the city council of Oklahoma City. The changes agreed upon were voted by the city council, but when the contract was sought to be enforced the same objection was made to that contract that is urged to the one in the case at bar, and the court answered the argument as follows:

"Can it be rightfully said that, because the validity of this contract depended upon legislative action, there was in it therefore an inducement to corrupt the city council by improper means, and it is therefore void? We think not. If such a rule could be applied in this instance, then improper motives could be charged to every application for a franchise right. The plaintiff

has not here imposed upon the defendant a requirement to do anything of the kind. He has simply said, 'I will take your property at a given price if your franchises are amended in a manner to be agreed upon.' Such a contract of purchase and sale does not contain the elements which the courts have held to be illegitimate, because subversive of sound morals. To be so subversive requires something more than such an agreement."

And again the court said:

"This proposition of the defendants to sell their plant with franchises amended so as to satisfy the plaintiff as a purchaser, the amendments being a condition precedent to the plaintiff's liability in accepting the defendant's proposition, was a legitimate subject of contract and agreement, and does not, on the face of it, import corrupt or illegal action by either party."

So in the case at bar the agreement between the drug company and the bank that the bank would take over the stock of the drug company and pay all of its debts, provided the court would agree to accept the resignation of the assignee that had been named by it and appoint the assignee suggested by the bank, did not imply that anybody would attempt to corrupt the court in order to get its consent to the agreement, or that it would be necessary for any improper influence to be brought to bear upon the court to bring about the result the parties had agreed upon. The subject-matter of the contract was therefore legitimate, and the contract itself seems to have been entirely proper, and entered into in good faith. The bank, having received the benefits of the contract, has shown no good reason why it should be relieved from its burdens. It agreed to pay the plaintiff in error's claim, and should do so. It was error for the

trial court to sustain the demurrer. *Crowder State Bank v. Ætna Powder Co. et al.,* 41 Okla. 394, 138 Pac. 392.

We therefore recommend that the judgment appealed from be reversed, and the cause remanded, with directions to the trial court to overrule the demurrer, and for such further proceedings in said cause as the law. may direct.

By the Court: It is so ordered.