LIZZIE D. LANE, Respondent, v. H. C. NUNN, Appellant.

In the Kansas City Court of Appeals, June 26, 1922.

1. **APPEAL AND ERROR:** Trial Practice: Declarations of Law: Findings of Fact: Record Recitals Sufficient to Show Trial Court Gave Declarations of Law and Made Findings of Fact. Where judgment recites that findings of fact and conclusions of law were filed and placed with the other filings in the case with the word "given" on them in the handwriting of the trial court and endorsed with the number of the case, although clerk omitted to actually endorse filing mark on them, *held,* sufficient to show that trial judge gave declarations of law and made findings of fact.

Lane v. Nunn.

2. ———: ———: In an Action at Law in Which no Demurrer to the Evidence was Filed, Finding of Trial Court Must be Accepted Unless There was a Total Lack of Any Evidence Upon Which to Base It. Where parties at the trial treated case as an action at law, waived a jury and asked for declarations of law, the findings of the trial judge for the plaintiff after a trial at which no demurrer to the evidence was filed by defendant must be accepted unless perchance there is an absolute and total lack of any evidence whatever upon which to base it.

3. PRINCIPAL AND AGENT: Evidence Held Sufficient from Which Trial Court Could Find That Salesman was Agent of Defendant. Where defendant wrote a letter to plaintiff before a stock salesman called upon plaintiff, stating that if plaintiff would buy stock, defendant would, at the end of a year from such purchase, buy it from plaintiff, if plaintiff so desired, at what it cost plaintiff, with evidence that the salesman did call upon plaintiff and made the same representations to plaintiff as contained in letter of defendant, and plaintiff bought stock relying upon defendant's promise, without any proof that the stock sold was not that of defendant, *held*, sufficient evidence from which trial court could find that salesman was agent of defendant.

4. CONTRACTS: Ordinarily Time is Not the Essence of a Contract. Ordinarily, time is not the essense of a contract, and for it to be so the contract must so provide, or there must be something connected with the purpose of the contract and the circumstances surrounding it which make it manifest that the parties intended that the contract must be performed at or within the time named.

5. ———: Time is Considered as of the Essence of a Purely and Strictly Optional Contract. If the contract is purely and strictly an optional contract, time is considered as of the essence of the contract.

6. ———: A Contract to Repurchase Corporate Stock at Expiration of One Year, Held, Not an Optional Contract of Which Time is of the Essence and a Delay of Thirty Days in Tendering Stock for Resale under Contract is Not Unreasonable. A contract that if plaintiff would purchase corporate stock, defendant would repurchase stock at the end of a year, if plaintiff did not want it, *held*, not such an option contract as made the phrase "at the expiration of one year" such an essence of the contract as that plaintiff was required to present her stock on the precise day on which the year ended else she lost her right, and a delay of thirty days after expiration of year before formal tender of stock to defendant was not so unreasonable as to defeat plaintiff's right to resell the stock.

7. ——: Where Time is Not Essence of Contract and Neither Party Has Repudiated it, One Party Cannot Evade Its Obligations on Ground of Delay Unless he Shows Damage as Result of Delay or Such an Unreasonable Delay as to Evince an Intention on Part of Delaying Party that Contract is at an End. Where a contract has been mutually and fairly entered into by both parties and time is not expressly made the essence of the contract and neither party has expressly repudiated it, one party cannot evade its obligations on the ground of delay of the other, unless he shows damage to himself by such delay, or such an unreasonable or intentional and willful delay as will evince an intention on the part of the delaying party to treat the contract as at an end.

Appeal from the Circuit Court of Jackson County.— *Hon. Thos. B. Buckner,* Judge.

AFFIRMED.

*Stubenrauch & Hartz* for respondent.

*Edwin A. Krauthoff, W. S. McClintock* and *A. L. Quant,* for appellant.

TRIMBLE, P. J.—Plaintiff, in her petition, alleged that she purchased of W. W. Blaker, agent of defendant, twenty-five shares of stock in the Associated Mill and Elevator Company, the said Blaker and defendant representing and agreeing with plaintiff at the time, and as part consideration of said purchase, that whatever stock plaintiff would purchase of said Blaker in said Associated Mill and Elevator Company, defendant Nunn would, at the expiration of one year from the date of such sale, purchase the same back from plaintiff at the price plaintiff paid therefor; that the said representations were partly oral and partly in writing, the written part being attached to the petition and marked Exhibit 1; that relying upon the representations of Blaker and defendant Nunn, plaintiff did, on or about May 15, 1919, purchase of Blaker and of defendant Nunn $2500 of stock in said Associated Mill and Elevator Company, giving her notes therefor in the sum of $2500 which she afterwards paid

in full; that on the — day of May, 1920, one year after the purchase of said stock, she offered to return said stock to defendant Nunn and demanded the $2500 of him, but defendant refused to pay same, and that plaintiff now brings the aforesaid stock into court for defendant's use, and defendant is indebted to plaintiff in the sum of $2500 with six per cent interest from May 15, 1920, for which judgment is prayed.

The answer contained a general denial, along with certain other matters, among which was a special denial, under oath, that Blaker was at any time an agent of defendant with reference to the matters charged in the petition. .The reply was a general denial.

The only evidence in the case is that offered in plaintiff's behalf, for when plaintiff closed her testimony, defendant rested, without offering a demurrer, and the court took the case under advisement, in accordance with the evident desire of counsel to submit briefs, as counsel for defendant announced they had "some law to present" and "some declarations of law" and the court thereupon directed that they "bring them in with the brief." Plaintiff submitted declarations of law, but defendant did not.

Although there is some apparent contention that the court did not make findings of fact nor conclusion of law, yet manifestly that was done. The judgment recites that fact and says they "are filed and placed with the other filings in.the case." They were shown to be there with the word "given" on them in the handwriting of the trial court and endorsed with the number of the case. The only thing lacking about them is that the clerk omitted to actually endorse the filing mark on them.

The trial court found that the sale of the stock to plaintiff was on or about the 17th of May, 1919, and that she purchased the same of defendant Nunn "through the defendant's agent W. W. Blaker;" that at the time of said purchase, and as a part of the consideration of same, defendant agreed that he would, at the expiration of one year from the date of said purchase, take back said stock

at the price plaintiff paid therefor; that in the sale Blaker represented defendant Nunn as agent; that plaintiff, relying on said representations, did, on the 17th of May, 1919, purchase twenty-five shares of said stock, giving therefor her notes aggregating $2500 which she later paid in full, that plaintiff, through her son, attempted to notify defendant of her decision to return said stock and have him repay the amount she paid for same, but being unable to reach defendant in this manner, plaintiff, through her attorney, on June 15, 1920, offered to return said stock to defendant Nunn and demanded the $2500 she had paid; that Nunn refused to accept said stock or to pay said $2500, and thereupon plaintiff brought this suit and tendered said stock into court for the use of, and to be delivered to, the defendant.

From these facts the court concluded that plaintiff was entitled to recover; that said stock being the property of defendant at the time it was sold to plaintiff, the latter had a reasonable time after the expiration of one year to return said stock to defendant and demand of him the return of her money, and that having made such offer to return within a reasonable time after the expiration of one year, plaintiff is entitled to recover $2500 with six per cent interest from June 15, 1920. Thereupon judgment was rendered in her favor for $2708.33, and that, upon the payment of said sum, the shares of stock deposited in court by plaintiff be delivered to defendant. The latter appealed.

The evidence in the case is that plaintiff resided at or near Bucklin, Kansas, and, some two days before Blaker called upon her to sell her the stock, the defendant wrote her the following letter:

"H. C. Nunn, President, Harry Hodgson, Vice-President, C. K. Davis, Secretary-Treasurer.

LIBERTY MILLING COMPANY
Both Phones: Main 3925.
12 Board of Trade Building

Kansas City, Missouri.
May 13, 1919.

Mrs. Lizzie D. Lane,
Bucklin, Kansas.
Dear Madam:

In regard to any stock you may purchase of Messrs. Blaker and Packard, of the Ascociated Mill and Elevator Company, this is to advise you that at the expiration of one year from the date of such purchase, if you should so desire, I will be glad to relieve you of all or any such portion of your investment that you do not want to keep as an investment and at cost price to you.

Yours truly,
H. C. NUNN."

About the time or very shortly after plaintiff received the above letter, Blaker called upon her and her son to sell her the stock; and, in the course of the negotiations, Blaker told them that if they would take the Associated Mill and Elevator Stock, "at the end of one year if we. didn't want the stock, Mr. Nunn would take that stock off our hands at what it cost us—one year from date."

Plaintiff thereupon signed two notes, one for $1000 and the other for $1500, due six months after date, payable to the order of herself and endorsed by her, and Blaker took the notes away with him, giving plaintiff a receipt therefor, dated "May —, 1919," and on returning to defendant's office, wrote plaintiff a letter, on the same stationary and having the same letter-head as Nunn's letter bore, in which he inclosed her the twenty-five shares of stock. This letter was dated May 19, 1919.

The notes, being in a form whereby they could be transferred by delivery and without endorsement, were turned over before maturity to a bank. In January, 1920, when these notes were due, defendant was in Bucklin, and plaintiff, through her son, tried to get defendant to take the stock back, mentioning to him what he had agreed to do. Defendant replied, "If I agreed to do anything of that kind, I will take care of it" and then

said that when the year was up he would be able to take care of it, and plaintiff was thereupon compelled to pay the notes which she had given.

Sometime along between March and May, plaintiff's son said he could not give the exact date, the son went to defendant's office to get him to take the stock back, but was unable to see defendant as he was not in his office. There is an inference that both mother and son went to see the defendant as the son says "We were in there," and the same language is used when speaking of occasions when mother and son were both present and the business in reference to the stock was being discussed. This is here said in view of defendant's contention that there is no evidence that the son was the plaintiff's agent, but clearly the evidence is ample to justify the trial court in finding that he was. Besides, there is nothing whatever upon which defendant can assert a claim that the son was not her agent.

Not being able to see defendant, the son, on June 15, 1920, consulted attorneys and they went to see defendant taking with them the letter Nunn had written and also a letter from the attorneys to Nunn in which they set forth plaintiff's claim and that she had relied upon defendant's letter in making the purchase. They handed this letter to the defendant personally and also showed him his letter of May 15, 1919. The defendant acknowledged this letter was his and referred them to someone who was not in, and then told them to see his (defendant's) attorneys. Negotiations were thereafter had with them and defendants was also seen, but not being able to get anywhere, plaintiff finally made a formal tender of the stock and demanded her money back. This was refused and suit was brought.

Whether the action in reality amounts to an action in equity for the specific performance of a contract or is an action at law for breach of contract, would seem to matter little as no point is now made thereon, and the parties at the trial treated it as an action at law, waived a jury and asked for declarations of law. It being an

action at law in which no demurrer to the evidence was filed and in which the court found for plaintiff, it would seem that the finding must be accepted unless perchance there is an absolute and total lack of any evidence whatever upon which to base it. Indeed, there was no complaint at the trial, or in the motion for new trial or elsewhere that the judgment is outside of or unsupported by the pleadings, or that the petition pleaded an absolute and unconditional contract to repurchase and proved a contract to repurchase *if* plaintiff desired to sell. We think, however, that while the petition did not expressly and in so many words state such condition, it is necessarily implied in what was pleaded.

Appellant's first point is that the court erred in admitting, and in refusing to strike out, the evidence of what Blaker, when endeavoring to sell said stock to plaintiff, said Nunn would do. So far as we are able to see, there is no difference between what Blaker said Nunn would do and what Nunn said in his letter he would do. In legal effect, Nunn's letter said exactly what Blaker said Nunn would do. Consequently, it is difficult to perceive what harm could have resulted to defendant from the mere admission of such evidence. However, the petition pleads that the contract relative to the sale and repurchase of the stock was between Nunn and the plaintiff and was made partly by Nunn's letter and partly by what Nunn's agent, Blaker, said to plaintiff; and (even though no point thereon was made at the trial), it may be necessary, in order for the evidence to strictly follow the pleadings, that there be some evidence of the case as pleaded and found by the court. But, conceding this to be true, nevertheless, we think there is some evidence sufficient to justify the court in inferring such to be the facts in the case. The contract pleaded was, in effect, that if plaintiff would buy stock in the Associated Mill and Elevator Company, defendant would, at the end of a year from such purchase, buy it from her, if she so desired, at what it cost her. Whether it was Nunn's stock or merely stock in the Company would seem to

make little difference. Nunn's letter indicated that Blaker would call on her for the purpose of selling her the stock, and told her what he would do, and Blaker did call on her and made the same representations contained in Nunn's letter and she bought the stock relying on Nunn's promise. Thereupon Blaker went back to defendant's office, and, upon the same stationary and letter-head that Nunn had used, he sent her the stock. It is true, the certificates of stock are signed by Nunn as president of the Associated Mill and Elevator Company and are issued May 17, 1919, direct to plaintiff, but this does not forbid the idea that the stock was merely a reissue of stock that formerly belonged to Nunn. But whether it did or not, the plaintiff was reasonably led to believe that Blaker was Nunn's agent in the matter and there was, we think, sufficient evidence from which the trial court could find that he was.

It is next contended that time was of the essence of the contract and the plaintiff, not having formally tendered the stock to defendant until after exactly one year from the precise day of purchase, she is not entitled to recover. No such issue was raised in the pleadings. But without regard to whether this was necessary to be pleaded or not, was the time of the essence of this contract?

Ordinarily, time is not of the essence of a contract and, for it to be so, the contract must so provide; or there must be something connected with the purpose of the contract and the circumstances surrounding it which make it manifest that the parties intended that the contract must be performed at or within the time named. [Carroll v. Hassell, 161 Mo. App. 424, 429; 13 C. J. 687.] If, however, the contract is purely and strictly an optional contract, time is considered as of the essence of the contract. [Holman v. Canlon, 143 Mo. 369; Dunaway v. Day, 163 Mo. 415.]

But the contract here in question is not strictly and purely an option contract. Nunn's letter, properly construed and interpreted under the circumstances of this case, and as plaintiff understood and acted upon it, was

a contract that if plaintiff would purchase the stock he would take the stock off her hands at the end of a year if she did not want it. In other words, his letter was such as to create, upon her purchasing the stock, an agreement on his part to take it at what it cost her if she did not want to keep it. While she was not obligated to sell it unless she desired to do so, yet, by her buying it relying as she did on his agreement to take it off her hands, it partook of the nature of a mutual contract which bound him to take the stock if she, at the end of a year, did not want it. While this may have made that feature of it optional with her, it did not cause all her rights to be forfeited merely because she did not, on the precise day of the expiration of the year, formally tender him the stock, especially when, as in this case, she notified him before the year was out that she did not want the stock and he agreed to take it at the end of the year. In our view of the case, the contract was not such an option contract as made the phrase "at the expiration of one year" such an essence of the contract as that she was required to present her stock on the precise day on which the year ended else she lost her right. There was no evidence to show that defendant was injured in anyway, or that the stock changed in price; and June 15, 1920, was not an unreasonable time after the expiration of the year. [Edmonds v. Evarts, 146 Mich. 485.] It has frequently been held that in contracts like this, the expression "at the end of one year" is equivalent to "after the end of one year." [Rogers v. Burr, 97 Ga. 10, 14; Annan v. Baker, 49 N. H. 161, 169.]

Where a contract has been mutually and fairly entered into by both parties and time is not expressly made of the essence of the contract and neither party has expressly repudiated it (in this case plaintiff notified defendant she wanted him to take the stock), one party cannot evade its obligations on the ground of delay of the other, unless he shows damage to himself by such delay, or such an unreasonable or intentional and willful delay as will evince an intention on the part of the delaying

party to treat the contract as at an end. [Davidson v. Crump, 99 Mich. 501; Annan v. Baker, supra; Edmonds v. Evarts, supra.]

The judgment of the circuit court is affirmed. All concur.