## OKLAHOMA NATURAL GAS CORPORATION v. DOUGLAS, and three other cases.

Nos. 23205-23208. Nov. 20, 1934.

Rehearing Denied Jan. 14, 1935.

Allen, Underwood & Canterbury and Paul Pinson, for plaintiff in error.

Bailey E. Bell and M. A. Dennis, for defendants in error.

A. M. Widdows, amicus curiae.

OSBORN, J. This action was filed in the district court of Okmulgee county by Joe Douglas, hereinafter referred to as plaintiff, against the Oklahoma Natural Gas Corporation, hereinafter referred to as defendant, and was a suit to recover the purchase price of certain stock in the defendant corporation by virtue of certain agreements hereinafter set out. A jury was waived and the cause tried to the court, and a judgment was rendered for plaintiff, from which defendant has appealed.

Plaintiff alleges that during the month of June, 1930, he purchased of defendant 10 shares of its six and one-half per cent. preferred stock of the par value of $100 per share, and for which he paid $1,000 and was issued a certificate therefor; that at the time of the purchase of said stock the defendant, through its agent and employee, C. C. Almy, expressly agreed to repurchase the same at the same consideration paid by plaintiff therefor, less a small carrying charge. It is further alleged that defendant maintained a finance department at Tulsa, Okla., for the purpose of repurchasing stock sold by its various agents and employees; that plaintiff tendered the stock so purchased by him to defendant and requested defendant to repurchase the same pursuant to the agreement and that defendant refused to do so. The prayer of the petition was for $1,000, with interest at six and one-half per cent.

Prior to the date of the transaction herein involved, the defendant corporation had initiated a stock selling program to float an issue of treasury stock, and as a part of the scheme sold a great portion of the stock through its regular employees and advertised through the newspapers and radio the various advantages of its issue of six and

one-half per cent. preferred "customer-ownership" stock. One of the advertisements appearing in the newspapers is as follows:

"In making your personal investments, you desire above everything else—SAFETY—; second, the ability to withdraw your principal without loss or delay; and, third, a fair rate of interest on your investment.

"The Oklahoma Natural Gas Corporation offers you all of the above desired qualities in its six and one-half per cent. customer-ownership shares. A market is maintained at par on these shares when purchased through our securities department."

In addition, a pamphlet was prepared, entitled "My Company and Your Company," and was circulated extensively among the employees. The principal purpose of the pamphlet was to instruct the employees how to sell stock, but it is admitted that a number of these pamphlets were read by the buying public. The various statements and representations contained in the pamphlet and referred to by the parties herein are as follows:

"The company is offering these shares for sale to finance important extensions and improvements that require capital. In making betterments, the company increases its revenue and the increased revenue or earnings will be an added safeguard to the investor's money. These shares are being offered at home to interest home people in the success of the company and to keep local money invested at home, which will help materially in the prosperity of the communities served by this company.

"What Will the Company Do With the Money Brought in by the Sale of Preferred Shares?

"Large sums of money are required each year for the purchase of equipment to meet the ever-growing demand for gas service. This requires the permanent investment of large sums of money which must come from the sale of securities.

"Will the Payments be Returned if Needed?

"Yes! On the easy payment plan, you may withdraw your money with interest at 6 per cent. on the accumulated payments at any time before making final payment, however, a nominal charge of $2 per share will be made for this service.

"In making your personal investments, you desire above everything else—SAFETY; second, the ability to withdraw your principal without loss or delay; and, third, a fair rate of interest on your investment.

"Oklahoma Natural Gas Corporation offers you all of the above-desired qualities in its 6½ per cent. customer-ownership shares. A market is maintained at par on these shares when purchased through our securities department."

Plaintiff testified that he was informed by the agent of the company who sold him the stock that the investment was safe and that the company would repurchase the stock at any time he needed the money. On January 1, 1931, plaintiff received a letter signed by W. K. Cotteral, treasurer of the Oklahoma Natural Gas Corporation, in which it was stated that for the past two years the company had maintained a par value market on its 6½ per cent. preferred stock, but due to the necessity of investing money in extensions and betterments of the gas service and the general decline and the depression of the market value of all stock and securities, it had become impractical to maintain the par market. The letter further stated that it was hoped that conditions would improve so that the privilege might again be put into effect. Upon receipt of the letter plaintiff made immediate demand upon defendant to repurchase his stock at par value. The demand was refused, and this suit was instituted.

It is shown that at various times prior to the receipt of the above letter the stock was selling on the market at a price considerably below par, but the defendant company continued to maintain the par market and bought and sold the stock in question at par and was enabled to secure par for its stock due to the fact that it did maintain a par market, and the plaintiff, as well as other customers, relied upon the representations made by the agents and employees of the company, as well as the fact that the company, for approximately two years, carried out the agreements entered into.

The first proposition advanced by defendant is that plaintiff's remedy is for damages for breach of contract, and that plaintiff should have sold the stock at the best price obtainable and then brought an action at law for the difference between the market price and the contract price. Plaintiff contends that this is not an equitable action for specific performance of a contract, but is an action for breach of contract, and that the amount of his recovery is fixed by the terms of the contract. Section 9964, O. S. 1931, provides:

"The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation with interest thereon."

A similar statute was construed by the California case of Dickinson v. Zubiate Mining Co., 11 Cal. App. 656, 106 P. 123. The

facts involved therein are somewhat similar to the facts presented here. Therein the court said:

"Defendant contends that its demurrer should have been sustained upon the ground that the complaint failed to state a cause of action. The sole purpose of the action was to recover from defendant the sums of money agreed to be repaid in accordance with the terms of the agreements. The tender of the return of the stock, if such tender was necessary, left nothing to be done by plaintiff. The consideration had passed to the obligor, and the only duty imposed upon defendant was the obligation to repay the sums of money specified. Hellings v. Heydenfeldt, 107 Cal. 577, 40 P. 1026. This fact brings the case within the provisions of section 3302, Civ. Code, which provides that 'the detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon.' As said in Bartlett v. Odd Fellows Bank, 79 Cal. 218, 21 P. 743, 12 Am. St. Rep. 139: 'When the plaintiff, as here, alleges facts to exist which, if proved, would entitle him to recover the sum of money he demands from the defendant, he has shown, so far as the recitals of the complaint can, that he has sustained damages.' Having alleged that defendant had promised to pay a specified amount for which judgment is prayed, it was unnecessary to allege that plaintiff had been damaged in such sum. Bank v. Port Townsend, 47 P. 896 (16 Wash. 450). The value of the stock was immaterial for the reason that plaintiff's right to repayment did not depend upon its value; and, as to the cause of action, it is likewise immaterial whether or not defendant accepted plaintiff's tender of a return of the stock."

In the case of Echternach v. Moncrief, 94 Kan. 754, 147 P. 860, it is said:

"Where stock in a corporation was sold upon a written contract whereby the vendors agreed, at the option of the vendee, to repurchase the stock four years later at the same price, with interest, the vendee, in electing to resell to the vendors, may recover the price fixed in the contract; and the vendee is not limited to damages measured by the difference between the market value of the stock at the time of the breach and the sum named in the contract, although he delayed action for over a year, such delay being occasioned solely by the solicitations and representations that, if given time, the vendors could and would comply with their obligations."

In the case of Reichert v. Mulder (Neb.) 235 N. W. 680, it is said:

"The measure of damages for breach of contract to repurchase corporate stock is the amount the seller agreed to pay as the repurchase price."

See, also, Williamson v. Marshal (Cal.) 200 P. 1058; Hulen v. Stuart (Cal.) 217 P. 750; Doughty v. Law, 178 Iowa, 840, 160 N. W. 226; Browne v. St. Paul Plow Works, 62 Minn. 90, 64 N. W. 66; Lane v. Nunn, 211 Mo. App. 280, 243 S. W. 427; Seneca Wire & Mfg. Co. v. A. B. Leach (N. Y.) 159 N. E. 700.

The trial court found that there was a valid and enforceable contract between plaintiff and defendant to repurchase the shares at par value. We are therefore called upon to examine the evidence to determine whether or not it reasonably supports the conclusion of the trial court in this regard. Defendant urges that there was no authority in the agent specified to make such contract on behalf of the corporation. The agent in this particular case was a regular employee of the company. Through radio and newspaper advertisements and the prospectus circulated by the company, it was announced to the public that this particular issue of stock was being offered to the public through the regular company employees, and various reasons for using the employees as stock salesmen were therein pointed out. That the employees were thereby authorized to make valid sales of stock is admitted. In the instructions submitted to the employees it was specifically pointed out that the company maintained a par market on these securities which were purchased through the securities department. In making such representations to plaintiff the agent was therefore following the instructions delivered to him by the company. Since the par market was maintained, it is not contended such representations were or could have been false or fraudulent. It is pointed out that under our statutes the corporate powers of a corporation are to be exercised, conducted, and controlled by a board of directors. Section 9761, O. S. 1931. The record does not show that the stock selling scheme was approved by the board of directors. We must therefore determine whether this fact would invalidate the contract. As a general rule a corporation is liable for the acts of its agents when acting within the scope of their authority, for it can act only through its agents; and it has been held that a corporation is liable even for false and fraudulent representations by its agents made in soliciting subscriptions or stock sales where the corporation has accepted the fruits of the agency. In the case of McLean v. S. W. Casualty Ins. Co. of Oklahoma, 61 Okla. 79, 159 P. 660, it is said:

"Where a corporation arms persons with blank contracts to take stock subscriptions

for the company, and they obtain subscriptions, through false and fraudulent representations and promises to do certain things, it is immaterial whether they were authorized by the company to make these representations and promises or not. If the company accepts the benefits of their misrepresentations, it must also bear the burdens of the same; and if the company is unwilling to be bound by their misrepresentations, it must surrender the benefits obtained under them."

In the case of Tidewater Southern Railway Co. v. Harney (Cal.) 162 P. 664, it is said:

"A corporation's agent authorized to sell its stock and having the blank subscription book had ostensible authority to make an agreement with a subscriber that if she was not satisfied with the stock in 10 months, the company would buy it back at the price paid."

In the case of Kaplan v. Reid Bros., Inc. (Cal.) 285 P. 868, it is said:

"Corporation cannot escape force of contract to repurchase stock on ground that general manager was unauthorized to execute contract, where he was only person representing corporation in sale of stock, since buyer had right to assume that salesman was authorized to do those legal acts which nature of his employment seemed to warrant."

See, also, Jones v. Bankers Trust Co., 235 Fed. 649; 14 C. J. 614.

It is next contended that the stock certificate itself constitutes a written contract between the plaintiff and defendant and that verbal collateral statements or representations cannot destroy its force and effect. In the case of Mackin v. Darrow Music Company, 69 Okla. 1, 169 P. 497, it is said:

"While parol testimony is inadmissible to change or contradict the terms of a written contract, yet a parol contract may be made between the parties contemporaneously with the execution of the written agreement, providing it is separate and independent, and its terms in no way conflicting with or contradictory to the written stipulation.* * *"

The above rule is amply sustained by the authorities. Powell v. Security National Bank of Tulsa, 141 Okla. 169, 284 P. 5; Edwards v. City National Bank of McAlester, 83 Okla. 204, 201 P. 233; Smith v. Bond, 56 Okla. 112, 155 P. 1116; Jesse French Piano & Organ Co. v. Bodovitz, 73 Okla. 87, 174 P. 765; Packard Oklahoma Motor Co. v. Funk, 117 Okla. 96, 245 P. 571.

In the instant case there is nothing in the contemporaneous parol agreement in question which conflicts with the written agreement evidenced by the certificate of stock and the above authorities are pertinent and controlling.

It is next contended that there was no consideration for the agreement to repurchase the stock. In the case of Cowden v. Karshner, 24 Fed. (2d) 916, it is said:

"Sum paid for stock by buyer at time of purchase held to constitute sufficient consideration for such purchase, and for agreement for repurchase thereof, by seller, in case of dissatisfaction."

In the case of Beverly v. Richards, 255 Mich. 508, 238 N. W. 270, it is said:

"Promise made by seller of stock to repurchase is supported by sufficient consideration."

To the same effect see Ophir Consol. Mines Co. v. Brynteson, 143 F. 829; Dickinson v. Zubiate Mining Co., supra. The above general rule is conceded by defendant, but it is argued that it has no application here by reason of the provisions of section 39 of article 9 of the Constitution, which are as follows:

"No corporation shall issue stock except for money, labor done, or property actually received to the amount of the par value thereof, and all fictitious increase of stock or indebtedness shall be void, and the Legislature shall prescribe the necessary regulations to prevent the issue of fictitious stock or indebtedness. The stock and bonded indebtedness of corporations shall not be increased except in pursuance of general law, nor without the consent of the persons holding the larger amount in value of the stock first obtained at a meeting to be held after 30 days' notice given in pursuance of law."

Defendant asserts that if the company executes, in consideration of the sale of stock and without any other consideration, any collateral agreement guaranteeing its maintenance at par or any collateral agreement to repurchase at par on demand, then it has given the customer the stock and a valuable asset in the way of a contract for the par value paid which, by the Constitution, is required to be paid for stock alone. We cannot give assent to such construction of the above constitutional provision, for it would be straining the provision far beyond the purpose and intent shown on its face. The above general rule announced by the authorities is clearly applicable here.

Defendant contends that the contract to repurchase the stock is within the statute of frauds (subd. 4, sec. 5034, C. O. S. 1921, subd. 4, sec. 9455, O. S. 1931), in that there was no memorandum thereof in writing subscribed by the corporation. In the case of

Pierce v. Rothwell (Wyo.) 267 P. 86, the court was there concerned with a problem similar to that presented here. The applicable statute of Wyoming is very similar to our own statute. Therein the court said:

"Where the defendant acted as agent in the sale, but was an officer in the corporation whose stock he sold, and was interested in its success, the weight of authority is to the effect that the contract is enforceable. There are two theories on which recovery is allowed: (a) On the theory that the oral contract is a part of the original contract for sale, and the delivery of the stock and payment therefor take it out of the statute. Roberts v. Cauffiel, 6 Pa. Dist. & Co. R. 706. (b) That the oral contract whereby the defendant agreed to take the stock off the plaintiff's hands, and refund the money or to repurchase it, is in the nature of a contract of indemnity, and therefore not within the statute. Lingelbach v. Luckenbach, 168 Wis. 481, 170 N. W. 711, 14 A. L. R. 380; Kunzmann v. Petteys, 74 Colo. 342, 221 P. 888; Schaefer v. Strieder, supra; Trenholm v. Kloepper, 88 Neb. 236, 129 N. W. 436; Gurwell v Morris, 2 Cal. App. 451, 83 P. 578; Clement v. Rowe, 33 S. D. 499, 146 N. W. 700."

In the case of Hills v. Hopp, 287 Ill. 375, 122 N. E. 510, it is said:

"A contract for sale of corporation stock, whereby the seller agreed to repurchase the stock if the purchaser became dissatisfied, being fully executed on the part of plaintiff and capable of being performed within one year, was not within the statute of frauds."

In the case of Stratbucker v. Bankers' Realty Inv. Co. (Neb.) 185 N. W. 271, it is said:

"A cash sale of stock on an oral agreement whereby the seller corporation undertakes to repurchase at the buyer's option constitutes an entire and indivisible transaction sufficiently performed to take it out of the statute."

Other authorities point out that where the contract to repurchase is separate and distinct from the contract of sale, the contract to repurchase is within the statute of frauds, but in view of the facts in this case, the above authorities are controlling.

Defendant contends that the contract to repurchase is ultra vires and void, citing section 39 of article 9 of the Constitution quoted, supra. Defendant cites the case of Tepel v. Coleman, 229 F. 300, holding that a sale of corporate stock to the corporation creates a fictitious increase of debt, and for the same reason it is urged that the above provision of the Constitution prohibits a corporation from making such a contract as

we are dealing with here. The cases are not entirely in accord in regard to this proposition, but it appears that the majority view is contrary to defendant's contention on the theory that the contract is entire and indivisible and the sale cannot be sustained unless the contract to repurchase can be enforced. It is not necessary, however, to determine this issue in this case, for the reason that the defense of ultra vires is not available to defendant under the facts in the case. In the case of Roxana Pet. Co. v. Covington State Bank, 98 Okla. 266, 225 P. 375, the rule of this jurisdiction is well stated. We quote from the body of the opinion as follows:

"The rule in this state was announced by this court in the case of Crowder State Bank v. Aetna Powder Co. et al., 41 Okla. 394, 138 P. 392, thus:

"'Where a cashier of a bank makes a contract which is beyond his power and authority, but the bank by reason thereof secures a benefit or beneficial effect, it will not thereafter be heard to urge nonliability thereunder on the plea of ultra vires.'

"In the body of the opinion, on page 400 of 41 Okla., the rule is applied in this language:

"'And it seems to us that, whether a contract is ultra vires or not, if the corporation has permitted its execution and allowed innocent parties to surrender property or other things of value thereunder without objection, and it is impossible to restore their status quo and at the same time itself receive and keep the benefits or beneficial effects, it will not then be heard to plead ultra vires or lack of authority of one of its principal officers to bind it in that particular respect.'

"The rule and its application announced in the above case has been expressly followed in Ewing et al. v. Board of Commissioners, 53 Okla. 250, 156 P. 229; Parker Gordon Cigar Co. v. First Nat. Bank of Claremore, 55 Okla. 468, 154 P. 1153; First Nat. Bank of Ada v. Womack, 56 Okla. 359, 156 P. 207; Western & Southern Fire Ins. Co. v. Murphy, 56 Okla. 702, 156 P. 885; Oklahoma City Nat. Bank v. Ezzard, 58 Okla. 251, 159 P. 267 (aff. 243 U. S. 631); Rainbow Oil & Gas Co. v. Barton, 70 Okla. 271, 173 P. 1135; Bennett v. W. A. Gage & Co., 74 Okla. 69, 176 P. 744."

In the case of Grace Securities Corp. v. Roberts (Va.) 164 S. E. 700, the court, in sustaining a recovery in an action similar to this action, said:

"If the contract of repurchase is valid, the plaintiff has under it a right to deliver her stock to the defendant and receive from it the price agreed upon. The same result follows if the contract to repurchase is in-

valid. If we concede that the contract is ultra vires (and for the purposes of this case and for the sake of the argument we are willing to concede this), it is void and might as well have never been written, for the net result of the transaction is that the defendant has the plaintiff's money, has given no consideration therefor, and holds it illegally."

There are other facts to be considered which bear upon this issue. The record discloses that there was a dual purpose in the issuance and sale of this particular issue of stock. While it was sought to raise money to carry on the affairs of the corporation and provide for extensions and improvements, it was also determined that primarily the stock should be sold to customers of the company and should be sold through the regular employees of the company for the purpose of creating a contact between the company employees and the public and to create good will on the part of those using the company service. In order to maintain the good will of these customers owning shares of this issue of stock, the plan was conceived of maintaining a par market where the stock might be redeemed at any time and immediately or as soon as possible thereafter transferred to another customer who desired to take advantage of the investment. From the record it appears that this scheme of operation worked satisfactorily up to January 1, 1931, long after the market value of the stock had fallen below par. Due to the operation and maintenance by the company of the par market it was able to secure from purchasers $100 per share when the market value of the stock was $88 per share.

Defendant relies upon the case of Wilson v. Torchon Lace & Mercantile Co. (Mo. App.) 149 S. W. 1156, wherein it was held that an agreement, by the president and manager of the corporation, in order to induce a sale of the capital stock of the corporation, that the corporation would repurchase it any time the purchaser desired, was ultra vires and unenforceable.

In a later case, however, that of Klein v. Johnson (Mo. App.) 178 S. W. 262, a similar contract relating to treasury stock was held to be valid and enforceable. It appears that the Missouri court differentiates between capital stock and treasury stock. This distinction, however, is not observed through all of the authorities, but we perceive that there are strong and convincing arguments in favor of such distinction. The various contentions and arguments of the defendant herein would present more force and effect if we were dealing with the capital stock of the corporation in the instant case. However, under the facts as presented herein, the doctrine of Klein v. Johnson is more applicable.

By the overwhelming weight of authority it is held that contracts of this nature are valid and will be enforced by the courts, where the seller refuses to carry out the agreement to repurchase. See annotation and authorities collated at pages 325-328, vol. 50, A. L. R. In some cases it is held that the rights of the parties are fixed and determined by the contract entered into, and although the actions are not treated as actions for specific performance, it is held that the parties are entitled to be placed in the same position as if the contract had been faithfully performed. Campbell v. Woods (Mo. App.) 99 S. W. 468; Klein v. Johnson, supra; Doughty v. Law, supra; Echternach v. Moncrief, supra; Lane v. Nunn, supra; Hulen v. Stuart, supra.

In some jurisdictions it is held that a contract of this nature constitutes a conditional sale under which the title passes for the time being, but subject to the option of the buyer to return the subject-matter of the contract, and upon exercise of the option the property is restored to its original status and the buyer is entitled to the return of the purchase price. Ophir Consol. Min. Co. v. Brynteson, supra; Shulte v. Boulevard Garden Lands Co., 164 Cal. 464, 129 P. 582, 44 L. R. A. (N. S.) 156, Ann. Cas. 1914B, 1013; Vent v. Duluth Coffee & Spice Co. (Minn.) 67 N. W. 70; Paulson v. Weeks (Ore.) 157 P. 590; Kirch v. Oakdale Milling Co. (Wyo.) 232 P. 784.

In connection with defendant's contention as to ultra vires, it is also urged that the contract to repurchase is contrary to public policy and constitutes preferment among the stockholders and a fraud on the creditors of the corporation, and, since defendant is a public utility, the interest of the public is also involved. These arguments would be highly appropriate if the issue of insolvency was involved. No claim of insolvency is made, but, on the contrary, it is admitted in the record at the time of the trial that the company is solvent and able to respond to the demand of all its creditors.

The judgment of the trial court is affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL, McNEILL, BAYLESS, and WELCH, JJ., concur. ANDREWS and BUSBY, JJ., absent.