JAMES LEARMOUTH *v.* CALEDONIA COUNTY COOPERATIVE CREAMERY ASSOC., INC.

May Term, 1938.

Present: POWERS, C. J., MOULTON, SHERBURNE, BUTTLES and STURTEVANT, JJ.

Opinion filed October 4, 1938.

*Conant & Parker* for the defendant.

*Porter, Witters & Longmoore* for the plaintiff.

SHERBURNE, J. The plaintiff, a farmer and milk producer, seeks to recover of the defendant, a cooperative creamery, the sum paid for a share of its capital stock, claiming that he was induced to buy the stock by the promise of the defendant to buy it back if the plaintiff became dissatisfied and wanted his money back. Verdict and judgment were for the plaintiff, and the defendant has come here upon exceptions.

Each patron of the creamery was required to buy a share of stock. Its by-laws provide:

> "Any stockholder who desires to dispose of his share or shares of common stock shall first offer to sell the same to the Association at par value by writing to that effect to the Board of Directors, and said Board of Directors shall have an option for thirty days after receipt of such offer to buy such shares for the Association."

There was also a provision for forfeiture of such stock for refusal to sell dairy products to the creamery without a reason satisfactory to it. Upon the stock certificates were printed words to the effect that the acceptance of the certificate constituted a contract between the stockholder and the corporation, and an agreement by the stockholder to accept and abide by the by-laws, and that he should not sell his stock until after he had first offered it to the corporation.

Viewing the evidence most favorably for the plaintiff it appears that the plaintiff had been a former patron of, and

stockholder in, the creamery, and had had his money refunded. He was not familiar with the by-laws and had not read the printed matter upon his former ·stock certificate. Desiring to have him bring his milk back to the creamery, its then president, one Achilles, came to him and asked him to come back and told him that if he would do so and take out a new share of stock, and later, if for any reason he became dissatisfied, the directors would refund his money in thirty days as they had done on the former occasion. To this he agreed and told Achilles to go ahead and take the pay for his stock out of his milk checks as he had done the first time. Relying upon this talk the plaintiff returned to the creamery and gave a note for a new share of stock to be paid by deductions from his milk checks. Although the new share was later fully paid for the certificate was never delivered to him. After a time the plaintiff became dissatisfied and stopped taking his milk to the defendant, and then asked its manager several times to return his money. Getting no satisfaction he went to see Achilles, who had then severed his connection with the defendant, and as a result Achilles dictated a letter for him to sign, and which he sent to the defendant, offering his share of stock for sale to the defendant within thirty days, and stating that payment in full was expected or notice of a hearing that he might present a just cause for an exchange of the stock for cash. No favorable action having been taken he brought this suit.

The defendant excepted to the denial of its motion for a directed verdict. The grounds of the motion are that the contract was void because not in writing, that the contract was *ultra vires*, and that Achilles was not authorized to make the contract. We will discuss these questions in this order.

██ It was unnecessary for the contract to be in writing. Where one is induced to buy stock by a promise of the seller that he will take it back and repay for it on request, the contract is not within the statute of frauds. The promise and undertaking of the seller is not an independent original contract, but rather a part of the original contract of purchase, by which the purchase becomes a qualified and not absolute one, and is so material that the contract would not have been made without it. The price is paid as well for the seller's promise as for the stock. *Fay* v. *Wheeler*, 44 Vt. 292. In that case the original contract

was taken out of the operation of the statute by a part performance by both parties, by the delivery of the stock by the defendant, and by the payment of the money by the plaintiff. Here, although the stock certificate was never delivered, the original contract was taken out of the statute by the payment therefor made by the plaintiff and accepted by the defendant. And it makes no difference that such payment was not made until later. *Thompson* v. *Alger,* 12 Metc. (Mass.) 428; 27 C. J. 253; *LaFountain & Woolson Co.* v. *Brown,* 91 Vt. 340, 101 Atl. 36, L. R. A. 1917F, 551.

It is claimed that the contract is *ultra vires* because our statute does not permit a corporation to buy its own stock, but we are not concerned with the question of *ultra vires,* as the contract by the defendant to repurchase the stock made to induce the original sale is inseparable from the contract of sale. The defendant cannot retain the money and repudiate its agreement. *Latulippe* v. *New England Invest. Co.,* 77 N. H. 31, 86 Atl. 361; *Adam* v. *New England Invest. Co.,* 33 R. I. 193, 80 Atl. 426; *Grace Securities Corp.* v. *Roberts,* 158 Va. 792, 164 S. E. 700; *Porter* v. *Plymouth Gold Mining Co.,* 29 Mont. 347, 74 Pac. 938, 101 A. S. R. 569; *Vent* v. *Duluth Coffee & Spice Co.,* 64 Minn. 307, 67 N. W. 70; *Mulford* v. *Torrey Exploration Co.,* 45 Colo. 81, 100 Pac. 596; *Oklahoma Natural Gas Corp.* v. *Douglas,* 170 Okla. 284, 39 Pac. (2d) 578, 101 A. L. R. 144. See annotations, 101 A. L. R. 154; Fletcher Cyc. Corp., § 1538. It should be noted that no question is raised as to the rights of creditors, and that our conclusion is reached upon the basis that they are not involved.

Achilles had no express authority from the directors to make this trade with the plaintiff, but at that time the directors were all buying milk, and whenever they could interest a producer to bring his milk to the creamery they did so. Achilles had talked with the directors several times at their meetings about making refunds, and it was understood by all that "reimbursing for shares of stock was the best principle for running the business," and the fair inference from all his testimony is that the other directors made similar trades, although neither they nor Achilles talked over any particular trade together. It was through Achilles that the plaintiff had purchased his first share and had it redeemed. In view of the provision in the

by-laws relative to buying back stock we see no reason why it does not enable the directors to adopt a policy of redeeming all stock and to contract with a prospective purchaser of stock to take his stock back if he becomes dissatisfied. The jury were justified in finding that Achilles was authorized to make this contract.

Defendant's clerk, who took office nearly a year subsequent to the date of the contract between the parties, was asked if, during the period she had been clerk, action was taken on various occasions respecting the refund of moneys to stockholders who should surrender their stock, and subject to exception answered "Yes." This evidence was not inconsistent with defendant's claim of discretionary power given to the directors to decide whether or not they would redeem stock whenever a patron ceased to bring his milk. In fact this witness later testified to two cases where such matters were held up for later consideration, and to cases where the reasons were that the patron had gone out of the milk business or had deceased, and that there was no record of any vote of the directors authorizing the kind of a contract made with the plaintiff. If there was any error in receiving the above answer we are unable to see how the defendant has been prejudiced.

While Achilles was testifying to the receiving of certificates of stock and paying to the holders the price in a great many cases, objection was raised to a statement in plaintiff's offer, but we are unable to find that any exception to the statement was asked for or granted. The record only shows that after a further offer by the plaintiff the answer to the pending question was received subject to exception, hence we will not consider the objection to the statement. *Gilfillan* v. *Gilfillan's Estate,* 90 Vt. 94, 98, 96 Atl. 704; *Underwood* v. *Cray,* 94 Vt. 58, 60, 108 Atl. 513; *Dansro* v. *Scribner,* 108 Vt. 408, 413, 187 Atl. 803.

It is unnecessary to mention the other exceptions saved and briefed. The questions raised are answered by what we have already said.

*Judgment affirmed.*

Chief Justice Powers, having deceased, took no part in the decision of this case.